## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PRS INSURANCE GROUP, INC., et al. | : | Case No. 00-4070 (MFW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| SEAN C. LOGAN, in his capacity as Chapter 11 Trustee of PRS INSURANCE GROUP, INC., et al. | : | Adv. Pro. No. 05-50818 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CREDIT GENERAL INSURANCE COMPANY and CREDIT GENERAL INDEMNITY COMPANY, | : | |
| | : | |
| Defendants. | : | |

## MOTION FOR LEAVE TO APPEAL ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND ORDER DENYING MOTION FOR RECONSIDERATION AND CLARIFICATION/ CORRECTION OF THE ORDER DENYING DEFENDANTS' MOTION TO DISMISS

Ann H. Womer Benjamin, Superintendent of the Ohio Department of Insurance, in her capacity as Liquidator (the "Liquidator") of Defendants Credit General Insurance Company and Credit General Indemnity Company, (hereinafter collectively " CGIC"), by and through counsel, hereby respectfully files this Motion for Leave to Appeal Order Denying Defendants' Motion to Dismiss and Order Denying Motion for Reconsideration and Clarification/Correction of the Order Denying Defendants' Motion to Dismiss (the "Motion")[1], pursuant to 28 U.S.C. § 158 and

---

[1] A copy of the Bankruptcy Court's Order denying the Liquidator's motion to dismiss is attached as Exhibit A, along with the Court's attendant Memorandum Opinion. A copy of the Bankruptcy Court's Order denying the Liquidator's motion for reconsideration is attached as Exhibit B, along with the Court's attendant Memorandum Opinion.

Rules 8001 and 8003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").
In support of her Motion, the Liquidator respectfully states as follows:

## PRELIMINARY STATEMENT

1.     With the instant adversary proceeding, Plaintiff, Sean C. Logan, Chapter 11
Trustee (the "Trustee") for PRS Insurance Group, Inc. ("PIGI") and various PIGI subsidiaries
(collectively the "PRS Group"), seeks to establish the predicate for disallowance pursuant to
Bankruptcy Code § 502(d) of the proof of claim filed by CGIC in these bankruptcy proceedings.
The predicate determination the Trustee seeks with the adversary proceeding is that that certain
transactions or transfers of assets between members of the PRS Group and CGIC pre-bankruptcy
are voidable preferences or fraudulent conveyances.

2.     Bankruptcy Code § 502(d) provides that "the court shall disallow any claim of
any entity from which property is recoverable . . . or that is a transferee of a transfer avoidable
under section . . . 547 [preferences], 548 [fraudulent conveyances] . . .of this title, unless such
entity or transferee has paid the amount, or turned over any such property, for which such entity
or transferee is liable . . . ."  11 U.S.C. §502(d).

3.     If a federal law that does not specifically relate to the business of insurance
directly conflicts with state regulation of the business of insurance and application of the federal
law would frustrate any declared state policy **or** interfere with a State's administrative regime for
insurance, the McCarran-Ferguson Act, 15 U.S.C. § 1101, *et seq.*, precludes application of the
federal law. *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307-310  (1999); *see* 15 U.S.C. § 1012
("No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by
any State for the purpose of regulating the business of insurance ... unless such Act specifically
relates to the business of insurance").

4.    In denying the Liquidator's motion to dismiss the adversary proceeding, the Bankruptcy Court concluded that it had both personal and subject matter jurisdiction over the adversary proceeding and that the McCarran-Ferguson Act was not implicated because the Trustee was not seeking an affirmative recovery from CGIC.

5.    The preference and fraudulent conveyance defenses the Trustee attempts to assert with this new adversary proceeding, however, are the very same preference and fraudulent conveyance claims concerning the disputed asset transfers he is affirmatively asserting in the statutory CGIC liquidation proceeding in Ohio, as a result of the proof of claim he filed. Litigation of the adversary proceeding and any determination by the Bankruptcy Court concerning whether the asset transfers in question are preferences or fraudulent conveyances would impermissibly frustrate Ohio policy and interfere with Ohio's administrative regime regulating insurance company liquidations.  Consequently, under McCarran-Ferguson, subject matter jurisdiction over the adversary proceeding is lacking.

6.    The adversary proceeding also is in direct violation of the CGIC liquidation order which enjoins persons from instituting or continuing to prosecute any civil action or claim, including counterclaims, against CGIC.  Also, if allowed to proceed, the claims asserted against CGIC in this adversary proceeding would disrupt the orderly and centralized liquidation of CGIC, and thus on alternative grounds the Bankruptcy Court should have abstained from exercising jurisdiction over the Trustee's claims against CGIC or at least stayed the adversary proceeding pending resolution of the Trustee's claims in the CGIC liquidation.

7.    Because the Bankruptcy Court erroneously failed to dismiss or stay the adversary proceeding, the Liquidator is compelled to seek relief by way of this requested interlocutory appeal.

### STATEMENT OF THE FACTS NECESSARY TO AN
<u>UNDERSTANDING OF THE QUESTIONS TO BE PRESENTED BY THE APPEAL</u>

**A.    CGIC Supervision and Examination.**

8.    Because of concerns about the company's operations, CGIC, an Ohio-domiciled insurance company, was placed into Supervision, pursuant to Ohio Revised Code § 3903.11. CGIC's parent, PIGI, and PIGI's other non-Ohio insurance company subsidiaries agreed to cooperate fully with the appointed Supervisor of CGIC and the Ohio Department of Insurance ("ODI").

9.    At the same time Supervision began, ODI was engaged in an ongoing, on-site examination of CGIC under Ohio Revised Code § 3901.07. As a part of its examination of CGIC, ODI was engaged in efforts to determine what statutory surplus, if any, the insurance company held. Ohio Revised Code § 3929.011 requires Ohio-domiciled insurance companies to maintain a certain minimum amount of surplus (*i.e.*, assets in excess of liabilities) to continue writing insurance. In response to various questions by ODI, PRS Group and CGIC management reported that assets used to support CGIC's reported surplus were actually held by PIGI or other PIGI subsidiaries.

10.    Once ODI realized that CGIC funds had been commingled with the funds of the PRS Group, ODI requested that CGIC and the PRS Group take remedial action. ODI's position was that if CGIC assets used to support its surplus were elsewhere in the PRS Group, then management should transfer them back into CGIC. All insurance company cash, receivables and other assets (as well as liabilities) should be directly held by CGIC, not other companies in the PRS Group. PRS Group and CGIC management agreed with ODI's position.

11.    PRS Group and CGIC management were cautioned more than once by the Supervisor to move only CGIC related assets back into CGIC. For instance, the Supervisor

circulated a memorandum to management confirming the understanding that it was important that all proprieties be adhered to and that only the cash and other assets which properly belong to CGIC be placed under its control.

12.    Management of the PRS Group and CGIC, in consultation with their in-house and outside lawyers, conducted a series of inter-company transactions and asset transfers during Supervision. The transactions and transfers returned to CGIC either its own assets or paid some amounts due to CGIC from PRS Group companies.

**B.    CGIC Rehabilitation and Liquidation.**

13.    Five months after CGIC was placed under Supervision, the Court of Common Pleas, Franklin County Ohio (the "Ohio Court") ordered CGIC into statutory Rehabilitation pursuant to Ohio Revised Code § 3903.12 because CGIC's condition was such that its further transaction of business outside of rehabilitation proceedings would be financially hazardous to its policyholders, creditors, and/or the general public.

14.    An order of rehabilitation allows a troubled insurance company to continue its existence, but the Superintendent is appointed Rehabilitator and given the power to manage the company until the problems are corrected, or until the insurance company is otherwise placed in liquidation. An insurance company may be released from rehabilitation when the court is satisfied that it is ready to resume normal operations.

15.    Two months after ordering rehabilitation, the Ohio Court determined CGIC to be insolvent and ordered it liquidated in accordance with Ohio's Liquidation Act, Ohio Revised Code Chapter 3903. The Superintendent of Insurance was appointed Liquidator pursuant to Ohio Revised Code §§ 3903.17 and 3903.18, and vested by operation of law with the title to all rights and assets of CGIC.

16.     In accordance with Ohio's Liquidation Act, the Ohio Court enjoined all persons from (1) instituting or continuing to prosecute any civil action or claim against CGIC or the Liquidator, (2) in any way interfering with the possession, control, title, rights, and interests of the Liquidator as provided by Ohio Revised Code §§ 3903.01 to 3903.99, inclusive, or (3) taking any action which tends to give rise to waste of assets, a preference, judgment, attachment, lien or the making of a levy against CGIC or its property or assets subject to the possession or control of the Liquidator.

17.     Also in accordance with Ohio's Liquidation Act, the Ohio Court set a time period within which any and all claims against CGIC must be filed with the Liquidator on proof of claim forms approved and provided by the Liquidator together with proper proof. The Trustee timely filed a proof of claim in the CGIC liquidation.

18.     Although the Trustee was instructed to file a separate proof of claim for each claim, he only filed one proof of claim form purporting to assert a number of distinct claims on behalf of various companies of the PRS Group. Accordingly, the Liquidator separated the claims and assigned them individual proof of claim sequence numbers. The proof of claim consists of twenty-three distinct claims pertaining to the disputed asset transfers during Supervision, including claims that the transfers are preferences or fraudulent conveyances under the Bankruptcy Code.

19.     The Trustee's claims are being evaluated by the Liquidator in the normal course of the liquidation proceeding and determined in accordance with the process established by Ohio's Liquidation Act. Ohio Revised Code § 3903.39. So far, the Liquidator has issued determination letters denying fourteen of the Trustee's twenty-three distinct claims. The Trustee has objected to eleven of the Liquidator's determinations. The remaining determinations will be

forthcoming.  As soon as practicable, the claims for which the Trustee has objected to the Liquidator's determinations will be set for hearing and resolution by the Ohio Court.

**C.     PIGI and PIGI Subsidiaries' Bankruptcies.**

20.     Near the end of CGIC's Supervision, an involuntary Chapter 7 petition was filed in the Delaware Bankruptcy Court against PIGI, a Delaware incorporated insurance holding company.  A few months later, PIGI agreed to the entry of an order for relief and converted the involuntary Chapter 7 case to a voluntary Chapter 11 case.  The Bankruptcy Court thereafter entered an Order approving the election of Sean C. Logan as Chapter 11 Trustee.

21.     The Trustee caused eleven subsidiaries (six domestic subsidiaries and five foreign subsidiaries) of PIGI to file voluntary Chapter 11 bankruptcy petitions with the Delaware Bankruptcy Court.  These cases are being jointly administered with the main PIGI bankruptcy case under the docket number of 00-4070(MFW).  The cases are not substantively consolidated.

22.     The Liquidator timely filed a proof of claim in the PRS bankruptcy, claiming in excess of $45.8 million owed to CGIC by the PRS Group. The Liquidator's claim against the PRS Group is primarily based upon intercompany receivables owing from the PRS Group to CGIC.  The proof of claim specifically and clearly indicates that it was filed merely as a defensive measure in order to avoid any possible waiver of CGIC's right to participate in the distribution of Debtors' estate.  The Liquidator expressly noted the impact of the McCarran-Ferguson Act in the proof of claim.

**D.     The Trustee's Prior Adversary Proceedings.**

23.     The Trustee filed objections to the Liquidator's proof of claim.  At the same time he filed the objections, the Trustee initiated two adversary proceedings against CGIC (Adversary Proceeding Nos. 03-50408 and 03-50409).    With his complaints in the two adversary

7

proceedings, the Trustee asserted avoidance and turnover actions under §§ 542, 544, 547, and 548 of the Bankruptcy Code with regard to the asset transfers to CGIC during Supervision. The Trustee also sought to disallow CGIC's proof of claim pursuant to § 502(d) of the Bankruptcy Code. In addition, the Trustee asserted a claim for equitable subordination of CGIC's proof of claim under Bankruptcy Code § 510(c).

24.     The Liquidator moved to dismiss the Trustee's two adversary proceedings against CGIC on the grounds that the federal statutes creating the bankruptcy causes of action asserted by the Trustee, as well as the Bankruptcy Court's exercise of jurisdiction, are reversed preempted by Ohio's Liquidation Act pursuant to the McCarran-Ferguson Act. After extensive briefing by the parties, the Court granted the Liquidator's motions to dismiss. In granting the motions to dismiss, the Court concluded that "application of the Bankruptcy Code **in the instant adversary [proceeding]** would frustrate state policy and interfere with a State's [Ohio's] administrative regime regulating insurance" and that "subject matter jurisdiction over **the adversary proceeding**" was lacking. (Memorandum Opinion at pp, 6 & 7) (emphasis added).

25.     The Trustee subsequently appealed the dismissal of the two adversary proceedings to the District Court (Civil Action No. 04-319 SLR). The District Court affirmed the dismissal of the two adversary proceedings.

E.     **The Instant Adversary Proceeding.**

26.     Earlier this year, the Trustee filed the instant adversary proceeding. The complaint is largely the same as the prior complaint filed by the Trustee against CGIC (Adversary No. 03-50408). However, this time, the Trustee attempts to circumvent the reach of the McCarran-Ferguson Act by stating in the complaint that "**[t]he PRS Group is not seeking any affirmative recovery from [CGIC] in this adversary proceeding.**" (Complaint at p. 2)

8

(emphasis in original.)  The Trustee asserts that he brought the adversary proceeding against CGIC solely to establish the predicate facts for the disallowance of CGIC's proof of claim pursuant to Bankruptcy Code § 502(d).

27.    As she did before, the Liquidator filed a Motion to Dismiss the Trustee's adversary proceeding against CGIC on the grounds that the Bankruptcy Court's exercise of jurisdiction over the adversary proceeding is reversed preempted by Ohio's Liquidation Act pursuant to the McCarran-Ferguson Act.    Alternatively, the Liquidator argued that if the Bankruptcy Court has jurisdiction, it should abstain from hearing the dispute or stay the action pending a determination by the Ohio Court of the underlying facts already at issue in the CGIC liquidation proceeding by virtue of the proof of claim filed there by the Trustee.

28.    This time, the Bankruptcy Court denied the Liquidator's motions to dismiss, concluding that McCarran-Ferguson was not implicated because the Trustee was not seeking affirmative relief from CGIC.  According to the Bankruptcy Court, in allowing the adversary proceeding to go forward, it was not "interfering with the jurisdiction of the Ohio State Court, but is merely exercising its exclusive jurisdiction" over the Trustee's preference and fraudulent conveyance claims.  (2005 Memorandum Opinion at p, 13.)   The Bankruptcy Court also found that because it was exercising its exclusive jurisdiction, neither abstention nor a stay were appropriate.  (2005 Memorandum Opinion at pp, 17-18.)

29.    The Liquidator's moved for reconsideration and clarification of the Bankruptcy Court's denial of her dismissal motion.   The Bankruptcy Court denied the Liquidator's reconsideration motion on December 8, 2005.  This timely motion for leave to appeal under 28 U.S.C. § 158(3)(a) followed.

DEL1 63138-1

## RELIEF REQUESTED

30.    The Judiciary Code at 28 U.S.C. § 158(a)(3) states in relevant part:

    (a)    The district courts of the United States shall have jurisdiction to hear appeals . . .

        (3)    . . . with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a)(3).

31.    Furthermore, Bankruptcy Rule 8001(b) states in relevant part:

An appeal from an interlocutory judgment, order or decree of a bankruptcy judge as permitted by 28 U.S.C. § 158(a)(3) shall be taken by filing a notice of appeal, as prescribed in subdivision (a) of this rule, accompanied by a motion for leave to appeal prepared in accordance with Rule 8003 and with proof of service in accordance with Rule 8008.

Fed. R. Bankr. P. 8001(b).

32.    By this Motion, which is prepared in accordance with Rule 8003, the Liquidator seeks leave to appeal the Bankruptcy Court's Orders denying her motion to dismiss the instant adversary proceeding and denying her motion for reconsideration of the Bankruptcy Court's Order denying her motion to dismiss.

## STATEMENT OF QUESTIONS TO BE RAISED
## BY THE APPEAL AND OF THE RELIEF SOUGHT

33.    On appeal are the following questions:

    1.    Did the Bankruptcy Court err in holding that it has subject matter jurisdiction over the adversary proceeding and that the McCarran-Ferguson Act was not implicated because the Trustee is not seeking affirmative recovery from CGIC in the adversary proceeding?

    2.    Did the Bankruptcy court err in determining that it was not required to mandatorily abstain from determining the adversary proceeding?

3.   Did the Bankruptcy Court err in failing to permissively abstain from determining the adversary proceeding?

4.   Did the Bankruptcy Court err in failing to stay the adversary proceeding pending resolution of the Trustee's proof of claim in the CGIC liquidation?

34.   The Liquidator would seek the following relief on appeal:

1.   that the United States District Court determine that the Bankruptcy Court erred in holding that it had subject matter jurisdiction and that, as such, the Bankruptcy Court is reversed and is prohibited, due to lack of subject matter jurisdiction and the requirements of abstention, from determining the adversary proceeding;

2.   that the Bankruptcy Court be reversed and, upon remand, instructed to dismiss the adversary proceeding for lack of subject matter jurisdiction or on abstention grounds or, in the alternative, stay the proceeding pending resolution of the Trustee's proof of claim in the CGIC liquidation; and

3.   that the Liquidator receive any and all other relief to which it is legally and equitably entitled.

## STATEMENT OF THE REASONS WHY AN APPEAL SHOULD BE GRANTED

35.   This appeal presents one of those exceptional circumstances where the Court should grant leave to appeal an interlocutory order because the issue of whether the Bankruptcy Court has subject matter jurisdiction over the adversary proceeding is too important to be denied immediate review. *See In re Sullivan*, 1992 U.S. Dist. LEXIS 3954 (E.D. Pa. March 31, 1992) (granting leave to appeal where question presented is too important to be denied review and too independent of the cause itself to require that consideration be deferred) (a copy of which is attached hereto as Exhibit C). "The propriety of some form of interlocutory review seems quite clear if the issue goes to the power of the . . . court to maker the order it did and only a question of law is presented." 15 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice & Procedure* § 3855 (2d ed. 1986).

36.     Neither 28 U.S.C. § 158(a) nor Bankruptcy Rule 8003 sets forth the standard a district court should use in determining whether to grant leave to appeal interlocutory bankruptcy orders. The Third Circuit, however, has recognized for such situations the standard delineated in 28 U.S.C. § 1292(b): (i) a controlling issue of law must be involved, (ii) the question must be one where there is substantial ground for difference of opinion, and (iii) an immediate appeal must materially advance the ultimate termination of the litigation. *See In re Bertoli*, 812 F.2d 136, 139 (3d Cir.1987). The instant situation meets that standard for leave to appeal interlocutory orders.

## I.     The Appeal Involves a Controlling Question of Law

37.     The question here is whether allowing the adversary proceeding to go forward for the purpose of establishing whether the disputed transfers are preferences or fraudulent conveyances would invalidate, impair, or supersede Ohio's Liquidation Act as applied to CGIC such that the McCarran-Ferguson Act reverse pre-empts the Bankruptcy Court's jurisdiction over the adversary proceeding. That question is a controlling question of law.

38.     "Controlling" means "serious to the conduct of the litigation, either practically or legally." *P. Schoenfeld Asset Mgmt. LLC v. Cedant Corp.*, 161 F.Supp.2d 355, 358 (D.N.J. 2001). There can be no question that the issue of whether the Bankruptcy Court has subject matter jurisdiction over the adversary proceeding is serious to the conduct of the case.

39.     A controlling question must be a question of law. *Hulmes v. Honda Motor Co., Ltd.*, 936 F.Supp. 195, 207 (D.N.J. 1996), *aff'd* 141 F.3d 1153 (3d Cir), *cert. denied*, 525 U.S. 814 (1998). The question of whether the Bankruptcy Court has jurisdiction over the adversary proceeding clearly is a question of law.

40.     A controlling question of law encompasses a ruling which, if erroneous, would be reversible error on final appeal. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)

12

(*en banc*); *In re Marvel Entertainment Group*, 209 B.R. 832, 837 (D. Del. 1997). If the Bankruptcy Court erred in deciding that it has subject matter jurisdiction over the adversary proceeding and that the McCarran-Ferguson Act was not implicated because the Trustee is not seeking affirmative recovery from CGIC in the adversary, its decision to allow the adversary proceeding to go forward would be reversible error.

41.    Postponing review creates the risk that the entire proceeding will be rendered nugatory. A resolution of the discrete jurisdictional dispute at this time would further the goal of judicial economy because it could obviate the need for further action by the Bankruptcy Court in the adversary proceeding.

## II.    There are Substantial Grounds for Difference of Opinion as to the Conclusions of Law and the Relief Ordered Thereon

42.    Generally, in order to satisfy this test, the difference of opinion must arise out of genuine doubt as to the correct legal standard. *P. Schoenfeld Asset Mgmt. LCC v. Cedant Corp.*, 161 F.Supp. 2d 355, 358 (D.N.J. 2001). However, even if there is no difference of opinion, leave will be granted if the bankruptcy court's decision is contrary to well-established law. *See In re Marvel Entertainment Group, Inc.*, 209 B.R. 832, 837 (D. Del. 1997). The issue of whether the Bankruptcy Court erred in determining that the McCarran-Ferguson Act did not divest it of jurisdiction over the adversary proceeding meets this test.

43.    Congress, in enacting the McCarran-Ferguson Act, has affirmed that the States have primary authority to regulate the insurance industry. *See SEC v. National Securities, Inc.*, 393 U.S. 453, 458 (1969). Under McCarran-Ferguson, a federal statute is reverse-preempted if "(1) the federal statute in question does not specifically relate to the business of insurance, (2) the state statute was enacted for the purpose of regulating the business of insurance, and (3) the

federal statute would invalidate, impair, or supersede the state statute." See, *e.g., In Re Am West Ins. Group, Inc.*, 285 B.R. 447, 451 (Bankr. C.D. Cal. 2002).

44.     It is quite clear that the Bankruptcy Code does not "specifically relate to the business of insurance." 15 U.S.C. § 1012.  As the United States Supreme Court has noted, the "bankruptcy statute uses general language that does not appear to 'specifically relate' to insurance." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 42 (1996); *see also United States Dept. of Treas. v. Fabe*, 519 U.S. 491, 501 117 S.Ct. 2202 (1993) (noting that federal bankruptcy priority rules do not "specifically relate" to the business of insurance).

45.     Following the Supreme Court's lead, numerous courts applying McCarran-Ferguson's reverse preemption analysis have concluded that the Bankruptcy Code does not specifically relate to the business of insurance. *In re PRS Insurance Group*, 294 B.R. 609, 612 (Bankr. D. Del. 2003) ("[W]e conclude that the Bankruptcy Code does not specifically relate to the business of insurance."); *In re Advanced Cellular Systems*, 235 B.R. 713 (Bankr. D. P.R. 1999) ("[T]here is no question that the Bankruptcy Code does not specifically relate to the business of insurance.").

46.     The Ohio Liquidation Act, on the other hand, clearly <u>does</u> have the purpose of regulating the business of insurance.  The Ohio Liquidation Act is "intended to 'protect the interests of insureds, claimants, creditors, and the public generally' by vesting the Ohio Superintendent of Insurance with extensive powers to investigate and ensure the financial condition of insurers operating within the state." *Benjamin v. John Hancock Financial Services, Inc.*, Case No. C2-04-184 (S.D. Ohio, August 18, 2004) (Judge George C. Smith) (a copy of which is attached hereto as Exhibit D).  In recognition of these purposes, the Supreme Court in *United States Department of the Treasury v. Fabe*, 508 U.S. 491 (1993) held that the Ohio

14

Liquidation Act creates a "complex and specialized administrative structure for the regulation of insurance companies from inception to dissolution." *Fabe*, 508 U.S. at 494.     The Ohio Liquidation Act therefore quite clearly regulates the business of insurance. *Id.*; *see also In re PRS Insurance Group*, 294 B.R. at 612 ("[W]e conclude that the [Ohio Liquidation Act] . . . was enacted for the purpose of regulating the business of insurance."); *In re Advanced Cellular Systems*, 235 B.R. at 723 (holding that provisions of Puerto Rico's liquidation act conferring upon the liquidation court exclusive jurisdiction over all issues related to insolvent insurer "is a law enacted for the purpose of regulating the business of insurance.").

47.     Where as here, the first two factors of McCarran-Ferguson are present, a federal statute is reverse preempted and may not be applied whenever application of the "federal statute would invalidate, impair or supersede the state statute." *See Humana, Inc. v. Forsyth*, 525 U.S. 299, 307-310, 119 S.Ct. 710 (1999).  In *Humana*, the Court concluded that if a federal law directly conflicts with state regulation and application of the federal law would frustrate any declared state policy **or** interfere with a State's administrative regime, the McCarran-Ferguson Act precludes application of the federal law.  *Id.*

48.     It is clear that allowing this adversary proceeding to proceed would directly conflict with Ohio's regulatory scheme that enjoins actions against the CGIC estate.  Allowing the adversary proceeding to proceed so that the Trustee can try to establish the predicate for disallowance under § 502(d) of CGIC's proof of claim also <u>would</u> interfere with Ohio's administrative regime regulating insurance company liquidations, which grants the Ohio Court exclusive jurisdiction over claims, including counterclaims, against the CGIC estate.

49.     The fact that the Trustee is not seeking any monetary recovery from CGIC in the adversary proceeding is not in and of itself determinative of the McCarran-Ferguson

jurisdictional issue. The affirmative preference and fraudulent conveyance claims made by the Trustee in the CGIC liquidation proceeding and the preference and fraudulent conveyance defenses he attempts to assert with this new adversary proceeding are the two sides of the same coin. The Liquidation Act provides a specific proof of claim process for the determination of claims against an insurance company's liquidation estate. This process does not contemplate litigation of the claims in a court other than the Ohio Court. Any determination by this Court of those claims in the context of adjudicating the Trustee's § 502(d) preference and fraudulent conveyance defenses could have a preclusive effect with regard to the Trustee's claims in the CGIC liquidation proceeding. Such an outcome would be an impermissible interference with the Liquidation Act and the Ohio Court's exclusive jurisdiction.

50.    The Bankruptcy Court erred when it concluded that it has exclusive jurisdiction over the preference and fraudulent conveyance claims asserted by the Trustee. Indeed, the Trustee asserts a fraudulent conveyance claim under Ohio law. Surely the Ohio Court has jurisdiction to hear a claim predicated on state law. Likewise, the Trustee asserted bankruptcy preference and fraudulent transfer causes of action as part of his claim in the Ohio Court liquidation proceedings - belying the argument that only the Bankruptcy Court can hear such claims.

51.    As noted, Ohio's Liquidation Act requires that all claims against an insurer in liquidation must be asserted and adjudicated exclusively within the context of the liquidation proceeding. Thus, under the proof of claim process established by the Ohio liquidation statute, the Ohio Court will hear and determine all disputed claims asserted against CGIC, regardless of whether the court would have jurisdiction to hear such claims outside of the statutory liquidation context. Ohio Rev. Code Ann. §§ 3903.35 - 3903.44. In other words, the Ohio Court, under

Ohio's Liquidation Act, will determine the bankruptcy preference and fraudulent conveyance claims asserted in the Trustee's proof of claim even though the Ohio Court would not have jurisdiction to hear such claims outside of a statutory liquidation proceeding.

### III.     An Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation

52.     An appeal would materially advance the ultimate termination of the adversary proceeding because, if the Liquidator is successful on her appeal of the Orders, the adversary proceeding would necessarily be dismissed for lack of subject matter jurisdiction or at the least stayed thereby ending the litigation.

53.     Further, immediate appeal will prevent the unnecessary and wasteful incurrence of significant costs to both the Debtors and the Liquidator in having to prepare at the same time for adjudications in two different courts some 500 miles apart.

54.     This multiplicity of litigation over the same transfers and assets would only serve to drain the resources of the CGIC liquidation estate, to the detriment of the innocent policyholders and creditors who are beneficiaries of the liquidation estate.  Likewise, allowing the adversary proceeding to continue would unnecessarily deplete the assets of the PRS Group estates and would be a waste of judicial resources given that the issue of whether the disputed transfers are preferences or fraudulent conveyances is joined in the Ohio Court and will be determined there.  Going forward with the adversary proceeding also would inappropriately expose CGIC and the PRS Group to the possibility of inconsistent results between the determinations of the Ohio Court and this Court on the avoidability of the transfers as preferences or fraudulent conveyances.

DEL1 63138-1

## CONCLUSION

Interlocutory appeals are available to prevent grave injustice in substantial and serious matters. The Liquidator files this Motion because it has no other means available to obtain relief from the Bankruptcy Court's erroneous ruling that the adversary proceeding should go forward. Because good cause for granting immediate leave to appeal the Bankruptcy Court's Orders exists, the Liquidator respectfully requests that the Motion be GRANTED and leave given for an interlocutory appeal from the Bankruptcy Court's two Orders.

Respectfully submitted,

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP

By: _Steven K. Kortanek_

Steven K. Kortanek (#3106)
919 N. Market Street, Suite 1000
Wilmington, DE 19801
(302) 552-5503 – Telephone
(302) 426-9193 – Facsimile

- and -

DINSMORE & SHOHL LLP
Stephen G. Schweller
Susan M. Luken
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8200

*Co-Counsel for Ann H. Womer Benjamin, Superintendent of Insurance, Ohio Department of Insurance, in her capacity as Liquidator of Credit General Insurance Company and Credit General Indemnity Company*

DEL1 63138-1

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PRS INSURANCE GROUP, INC., et al., | ) | Case Nos. 00-4070 (MFW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| SEAN C. LOGAN, the Chapter 11 Trustee of PRS INSURANCE GROUP, INC., et al., | ) ) ) | Adv. Proc. No. 05-50818 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CREDIT GENERAL INSURANCE COMPANY and CREDIT GENERAL INDEMNITY COMPANY | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## O R D E R

AND NOW, this **23rd** day of **SEPTEMBER, 2005,** upon consideration of the Motion to Dismiss or Stay filed by Credit General Insurance Company and Credit General Indemnity Company, and the response thereto of the Trustee, it is hereby

**ORDERED** that the Motion is **DENIED.**

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Steven K. Kortanek, Esquire[1]

_____

    [1] Counsel is to distribute a copy of this Order on all interested parties and file a Certificate of Service with the Court.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | Chapter 11 |
| PRS INSURANCE GROUP, INC., et al., | Case Nos. 00-4070 (MFW) |
| Debtors. | (Jointly Administered) |
| SEAN C. LOGAN, the Chapter 11 Trustee of PRS INSURANCE GROUP, INC., et al., | Adv. Proc. No. 05-50818 |
| Plaintiff, | |
| v. | |
| CREDIT GENERAL INSURANCE COMPANY and CREDIT GENERAL INDEMNITY COMPANY | |
| Defendants. | |

## MEMORANDUM OPINION[1]

Before the Court is the Motion filed by the Liquidator of Credit General Insurance Company and Credit General Indemnity Company (collectively "CGIC") to Dismiss or Stay the above adversary action. The issue presented is whether the McCarran-Ferguson Act prevents this Court from exercising jurisdiction over the chapter 11 Trustee's suit which seeks a determination that CGIC is liable to the estate for preferential or fraudulent transfers, solely as an objection to the proof of claim filed by CGIC. For the reasons stated below, the Court will deny the

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

Motion.

I.    BACKGROUND

In June 2000, the Ohio Department of Insurance ("ODI") placed CGIC under supervision. CGIC was one of the principal subsidiaries of PRS Insurance Group, Inc. ("PRS"), which served as a holding company for insurance related businesses. Because PRS was not an Ohio insurance company, it was not under direct supervision of the ODI. Nevertheless, for fear of the potential consequences of non-cooperation, PRS agreed to submit to the supervision orders of the ODI.

At first, the ODI attempted to sell CGIC. To enhance CGIC's marketability, the ODI engineered the transfer of approximately $20 million in assets from PRS to CGIC for little or no consideration. When no buyer was forthcoming, the ODI moved for the liquidation of CGIC, which is currently under a Final Order of Liquidation in the Court of Common Pleas, Franklin County, Ohio ("the Ohio State Court"). Pursuant to that Order, PRS is prohibited from commencing a civil action against CGIC to recover the $20 million in transfers. PRS did, however, file a proof of claim in the Ohio liquidation proceeding. To date, there has been no final adjudication of that claim.

On October 31, 2000, an involuntary chapter 7 petition was filed against PRS. On January 19, 2001, the case was converted

-2-

to chapter 11, and on June 1, 2001, the Court appointed Sean C. Logan ("the Trustee") as the chapter 11 trustee.

On April 30, 2002, CGIC filed a proof of claim in PRS's bankruptcy case for $45 million, largely based on inter-company receivables owed by PRS.  The Trustee objected to CGIC's proof of claim on January 22, 2003.

At the same time, the Trustee filed an adversary proceeding against CGIC for avoidance of fraudulent and preferential transfers, turnover, and breach of fiduciary duties ("the First Action").  On motion of CGIC, the Court dismissed the First Action on June 11, 2003, concluding that the Trustee's claims for affirmative recovery were reverse preempted under the McCarran-Ferguson Act.  Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Group, Inc.), 294 B.R. 609, 612-13 (Bankr. D. Del. 2003).  The District Court affirmed that decision.  Logan v. Credit General Ins. Co., No. 04-319-SLR (D. Del. March 31, 2005).

On April 11, 2005, the Trustee filed the instant adversary proceeding ("the Second Action"), asserting the same causes of action as the First Action.[2]  This time, however, the Trustee is not seeking any "affirmative" recovery, but merely raises the action as a "defense" under section 502(d) to the allowance of CGIC's claim.

---

[2]  The Trustee has also filed a separate adversary proceeding seeking equitable subordination of CGIC's claim under section 510(c) of the Bankruptcy Code.

-3-

II.  DISCUSSION

CGIC seeks to dismiss the Trustee's complaint arguing that the McCarran-Ferguson Act precludes this Court from exercising jurisdiction over the Second Action.  Moreover, even if this Court has jurisdiction, CGIC argues that it should abstain from hearing the dispute or stay the proceedings in deference to CGIC's Ohio liquidation proceeding.

A.  Standard of Review

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."  Koninklijke Numico N.V. v. Keb Enters. LP, No. 02-1529, 2003 U.S. Dist. LEXIS 5135, at *2 (D. Del. March 31, 2003).  In reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the very power of the court to hear the case is at issue and a court is free to weigh the evidence to satisfy itself that it has that power.  Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997).

B.  Jurisdiction Generally

This Court has exclusive jurisdiction over property of the estate and has jurisdiction to decide what is property of the estate.  See 28 U.S.C. §§ 1334(e) & 157(b)(2)(A), (E), (O).  The Court also has jurisdiction over preference and fraudulent conveyance actions.  28 U.S.C. § 157(b)(2)(F) & (H).

-4-

CGIC asserts, however, that the Court's exercise of subject matter jurisdiction in this adversary proceeding is "reverse preempted" by the McCarran-Ferguson Act.  See 15 U.S.C. §§ 1011-1015.

C.    Reverse Preemption

The McCarran-Ferguson Act provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). A federal statute is reverse preempted under the McCarran-Ferguson Act if (1) the federal statute in question does not specifically relate to the business of insurance, (2) the state statute was enacted for the purpose of regulating the business of insurance, and (3) the federal statute would invalidate, impair, or supersede the state statute.  See, e.g., Wagner v. Amwest Ins. Group, Inc. (In re Amwest Ins. Group, Inc.), 285 B.R. 447, 451 (Bankr. C.D. Cal. 2002).

This Court has already addressed the application of the above factors to the Trustee's stated causes of action - to the extent that the Trustee sought affirmative relief from CGIC - when it dismissed the First Action.  Logan, 294 B.R. at 612-13. In that opinion, the Court found that (1) the Bankruptcy Code does not specifically relate to the business of insurance; (2)

-5-

the Ohio statute providing for the liquidation of insurance companies was enacted for the purpose of regulating the business of insurance; and (3) the bankruptcy proceeding impaired the Ohio statute because, inter alia, a decision rendered in this Court may upset the priority and timing of distributions from the Ohio liquidation proceeding by requiring the return to the estate of funds improperly transferred to CGIC.    Id.

### 1.    Issue Preclusion

The Trustee argues that issue preclusion prevents CGIC from asserting that the McCarran-Ferguson Act preempts this Court's jurisdiction to consider the Second Action.    The Trustee relies on statements made by the District Court in affirming this Court's dismissal of the First Action.    Specifically, the District Court stated that "nothing in the McCarran-Ferguson Act or the Ohio Liquidation Act precludes the Trustee from asserting defenses in the bankruptcy proceeding pursuant to 11 U.S.C. § 502(d). . . ."    Logan, No. 04-319-SLR, slip op. at 6.

For issue preclusion to apply, however, the issue decided must be essential to the judgment.    Arizona v. California, 530 U.S. 392, 414 (2000) ("It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment'.") (citation omitted).    The District Court's statement was not essential to

-6-

the judgment rendered, because the issue before the District Court was whether the Trustee's request for "affirmative" relief was preempted by the McCarran-Ferguson Act. Therefore, issue preclusion does not prevent CGIC from arguing that the Trustee's request for "defensive" relief is also preempted by the McCarran-Ferguson Act.

### 2.   Filing a Proof of Claim

The Trustee argues that reverse preemption is not applicable in this case because CGIC voluntarily subjected itself to the jurisdiction of this Court to decide issues related to its proof of claim by the mere act of filing that claim in this bankruptcy case.

When a creditor files a proof of claim, it subjects itself to the jurisdiction of the Bankruptcy Court to hear all matters related to the allowance of that claim. Gardner v. New Jersey, 329 U.S. 565, 573-74 (1947) (state waived sovereign immunity by filing a proof of claim in the bankruptcy case). See also, Travellers Int'l AG v. Robinson, 982 F.2d 96, 100 (3d Cir. 1992) ("[T]he equitable jurisdiction of the bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim."). Jurisdiction to consider a proof of claim submitted by a creditor includes jurisdiction to determine all defenses to that proof of claim, including affirmative counterclaims that may be set off against that claim. For example, when a governmental

-7-

unit files a proof of claim, sovereign immunity is deemed to be
waived "with respect to a claim against such governmental unit
that is property of the estate and that arose out of the same
transaction or occurrence out of which the claim of such
governmental unit arose." 11 U.S.C. § 106(b) (emphasis added).
See also Ossen v. Dep't of Soc. Servs. (In re Charter Oak
Assocs.), 361 F.3d 760, 769-70 (2d Cir.) (holding that the filing
of a proof of claim by a governmental unit was a waiver of
sovereign immunity with respect to permissive, as well as
compulsory, counterclaims so long as they are capped by the
amount of the claim), cert. denied, 125 S. Ct. 408 (2004). As
the Ossen Court stated: "[O]nce a state has voluntarily submitted
itself to the court's jurisdiction by filing a proof of claim
with a view to reaping financial benefit, there is no longer any
danger that the state will be subjected to the 'indignity' of
being haled into court." 361 F.3d at 769.

Specifically, jurisdiction arising from the filing of a
proof of claim includes jurisdiction over defenses to that claim
which are raised under section 502(d). See, e.g., Official Comm.
of Unsecured Creditors of 360networks (USA) Inc. v. Pub. Util.
Comm'n of California (In re 360networks (USA) Inc.), 316 B.R.
797, 805 n.11 (Bankr. S.D.N.Y. 2004) ("[T]he application of §
502(d) to disallow a claim of a California instrumentality would
be entirely consistent with the spirit and rationale" of cases

-8-

holding that a state waives sovereign immunity by filing a proof
of claim); <u>Massachusetts Air Conditioning & Heating Corp. v.</u>
<u>United States (In re Massachusetts Air Conditioning & Heating</u>
<u>Corp.)</u>, No. 93-11850, 1994 Bankr. LEXIS 1560, at *6 (Bankr. D.
Mass. Sept. 23, 1994) ("A creditor's failure to remit a
preferential transfer is thus a complete defense to that
creditor's claim against the bankruptcy estate [under section
502(d)]. Certainly the United States must be deemed to have
waived its immunity as to the issues raised by its own claim.").

Consequently, the Court concludes that it has jurisdiction
over the Second Action because CGIC waived any barrier to this
Court considering the trustee's objections to its proof of claim,
including the affirmative counterclaims raised by the Second
Action.

### 3.    Nature of Section 502(d)

CGIC argues, nonetheless, that given the peculiar nature of
a section 502(d) objection to claim,[3] the Trustee's objection is
still subject to reverse preemption. CGIC argues that a section
502(d) objection is different from a defense to the underlying
merits of the claim because it requires a finding that CGIC is

---

[3] Section 502(d) of the Bankruptcy Code provides that "the
court shall disallow any claim of any entity from which property
is recoverable . . . or that is a transferee of a transfer
avoidable under section . . . 547, 548 . . . of this title,
unless such entity or transferee has paid the amount, or turned
over any such property, for which such entity or transferee is
liable. . . ."  11 U.S.C. § 502(d).

liable for an avoidable transfer under the Bankruptcy Code.

The Court agrees that an objection under section 502(d) is not an attack on the merits of the claim. Rather the purpose of section 502(d) is to ensure compliance with judicial orders by totally disallowing any claim filed by a creditor that is liable for a preferential or fraudulent transfer - unless the creditor first pays the amount due to the estate. E.g., Holloway v. IRS (In re Odom Antennas, Inc.), 340 F.3d 705, 708 (8th Cir. 2003); AmeriServe Food Distrib., Inc. v. Transmed Foods, Inc. (In re Ameriserve Food Distrib., Inc.), 315 B.R. 24, 35 (Bankr. D. Del. 2004).

In order to sustain a section 502(d) defense to a claim, the debtor must first establish that the creditor is liable for an avoidable transfer. See Odom Antennas, 340 F.3d at 708. Consequently, CGIC asserts that the McCarran-Ferguson Act preempts the Trustee's section 502(d) defense because the result reached is the same as if the Trustee were seeking affirmative recovery. This is not correct. If the Trustee were seeking affirmative relief, he would be able to seek to collect on any judgment entered in his favor. The Trustee does not seek payment of the avoidable transfers in this forum; he seeks only to prevent the payment of CGIC's claims.

Therefore, the injunction in the Ohio proceeding which prohibits the Trustee from seeking to exercise control over any

property within the Ohio State Court's jurisdiction is not being violated by the prosecution of the Second Action. See, e.g., In re Metiom, Inc., 301 B.R. 634, 638-39 (Bankr. S.D.N.Y. 2003) (holding that the automatic stay did not apply to an objection under section 502(d) where the trustee waived any affirmative relief because the trustee was not attempting to recover a claim against the creditor/debtor, to obtain any property from the creditor/debtor's estate, or to exercise control over the creditor/debtor's estate property).

Further, prosecution of the Second Action will not have the same adverse impact on the Ohio liquidation proceeding that the First Action would have had. In the Second Action, the Trustee is not affirmatively seeking any relief against CGIC and is not attempting to control the assets of CGIC by asserting affirmative claims. Even if the Trustee prevails in the Second Action, he will not seek satisfaction of any judgment from CGIC or from assets of CGIC, other than through the claim he filed in CGIC's proceeding.

CGIC argues, however, that if the Trustee is successful in the Second Action, CGIC will be prevented from recovering anything on its $45 million claim in this proceeding until it pays its potential liability on the Trustee's $20 million avoidance action. This, it argues, would result in PRS effectively being paid in full on its claim ahead of other

-11-

creditors in the Ohio liquidation proceeding. Again, this is not correct. CGIC will not have to pay the judgment if the Trustee prevails in the Second Action (although the Trustee would have the right to assert the judgment as a claim in the Ohio proceeding). If CGIC elects not to pay the Trustee the amount of any avoided transfer, however, its claim will be eliminated in this case and it will not be entitled to any distribution from this estate.

In analogous circumstances, when two entities are under the protection of the Bankruptcy Code or a state's insolvency laws, Courts have applied section 502(d) in a manner consistent with the recoveries expected in the two cases. In such a case, the amount of "liability" that the insolvent preference defendant must pay under section 502(d) is not the face amount of the judgment - but only the percentage payout that its other creditors will receive in its case. In re Shared Technologies Cellular, Inc., 293 B.R. 89, 97 (D. Conn. 2003).

CGIC argues, however, that under the Shared Technologies holding, the Ohio State Court must first determine what percentage will be paid to CGIC's creditors before this Court can disallow CGIC's claim. The Court disagrees. A finding in this case that CGIC is liable to the estate for any amount is sufficient to prevent a payout on CGIC's claim, pending a determination by the Ohio State Court of the percentage creditors

-12-

will receive in CGIC's proceeding.  11 U.S.C. § 502(d).  Once PRS
receives its pro rata recovery in the Ohio proceeding, CGIC will
be entitled to allowance and payment of any claim it has against
PRS in this case.

CGIC also argues that issue preclusion means that any
decision by this Court would establish the amount of the
Trustee's proof of claim in the Ohio liquidation proceeding and
thereby rend power away from the Ohio State Court.  The Court is
not convinced that this is a sufficient basis for finding that
this adversary proceeding interferes with the Ohio liquidation.
This Court has jurisdiction over preference and fraudulent
conveyance actions brought under the Bankruptcy Code; the Ohio
State Court does not.  28 U.S.C. §§ 1334(a) (granting the
district courts exclusive jurisdiction over all cases arising
under title 11), 28 U.S.C. § 157(b)(2)(F) & (H) (referring
preference and fraudulent conveyance actions to the jurisdiction
of the Bankruptcy Court).  Therefore, by deciding these actions,
the Court is not interfering with the jurisdiction of the Ohio
State Court, but is merely exercising its exclusive jurisdiction.
See, e.g., Colorado River Water Conservation Dist. v. United
States, 424 U.S. 800, 817 (1976) (noting "the virtually
unflagging obligation of the federal courts to exercise the
jurisdiction given them" by Congress).

-13-

CGIC argues that litigation in this Court would destroy the efficiency and economy of the Ohio proceeding. The fact that claim or issue preclusion might apply between the two fora, however, enhances efficiency and judicial economy rather than destroys it. E.g., Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) ("Collateral estoppel, like the related doctrine of res judicata, . . . promot[es] judicial economy by preventing needless litigation."). Further, there is relatively little difference in cost to CGIC to litigate the Trustee's objection to its proof of claim in this Court versus the Ohio State Court (which cannot even hear all the issues). CGIC chose this forum by filing a proof of claim; it cannot complain if it is called to litigate its claim here.

Therefore, the Court concludes that the Second Action is not reverse preempted by the McCarran-Ferguson Act because it seeks only to establish a defense to the claim filed by CGIC in this case.

D.  Abstention

Alternatively, CGIC asks this Court to abstain from hearing the Second Action. The Trustee argues that abstention is not appropriate because CGIC filed a proof of claim in the bankruptcy case and, as a practical matter, no proceeding exists elsewhere to deal with CGIC's claims against the Trustee or the Trustee's defenses.

-14-

1.    Younger Abstention

CGIC argues that abstention is warranted under the doctrine articulated by the Supreme Court in the case of Younger v. Harris, 401 U.S. 37 (1971).  Abstention based on Younger "is only appropriate where the following three requirements are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims."  Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005).

Abstention in this case under the Younger doctrine is not appropriate because the Ohio liquidation proceeding does not afford an adequate opportunity for the Trustee to raise his bankruptcy causes of action.  As noted above, the State Court does not have jurisdiction to adjudicate those causes of action because they arise under the Bankruptcy Code.  28 U.S.C. § 1334(a).  "[A]bstention is inappropriate in cases in which federal courts have exclusive jurisdiction over at least a portion of the claims presented."  Chiropractic Am. v. LaVecchia, 180 F.3d 99, 108 (3d Cir. 1999) (citation omitted).  See also Baggett v. Dep't of Professional Regulation, Bd. of Pilot Comm'rs., 717 F.2d 521, 524 (11th Cir. 1983) (holding that state "has no interest in having her administrative agencies prosecute disciplinary complaints that the administrative agency has no

-15-

jurisdiction to initiate.").

The possibility that other courts may have exclusive
jurisdiction over issues which relate to insurance liquidation
proceedings is apparently recognized by the relevant Ohio statute
which requires that the Ohio State Court stay its proceedings if
it finds that "any action should as a matter of substantial
justice be tried in a forum outside [Ohio]." Ohio Rev. Code Ann.
§ 3902.04(D).

## 2.    Burford Abstention

CGIC also argues that abstention is warranted by the case of
Burford v. Sun Oil Co., 319 U.S. 315 (1943). Abstention under
Burford is appropriate "when questions of state law in which the
state has expressed a desire to establish a coherent policy on a
matter of substantial public concern are raised." NYLife
Distribs. v. The Adherence Group, Inc., 72 F.3d 371, 376 n.8 (3d
Cir. 1995).

Abstention under Burford is not appropriate, however, if the
relief sought is legal in nature and not equitable. E.g., Feige
v. Sechrest, 90 F.3d 846, 850 (3d Cir. 1996) ("[A] district court
may not abstain under Burford and dismiss the complaint when the
remedy sought is legal rather than discretionary."). In this
case, the relief sought is legal, not equitable. E.g.,
Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 43 (1989)
("[A]ctions to recover preferential or fraudulent transfers were

-16-

often brought at law in late 18th-century England.").

CGIC argues that the Trustee's section 502(d) objection –
the purpose of which is to enforce court orders – is equitable
and is subject to a <u>Burford</u> abstention.  The Court disagrees.
Although section 502(d) is the umbrella under which the Trustee
is proceeding, that does not change the fundamental nature of the
underlying actions from legal to equitable.

Further, "<u>Burford</u> abstention is precluded when a state court
has no jurisdiction over a plaintiff's direct . . . claims."
<u>Riley v. Simmons</u>, 45 F.3d 764, 777 (3d Cir. 1995).  Because, as
noted above, the Ohio State Court does not have jurisdiction over
the preference and fraudulent conveyance claims asserted by the
Trustee (which are legal not equitable), the Court concludes that
<u>Burford</u> abstention is not warranted.

G.    Stay of Proceedings

CGIC contends that the Court should stay this adversary
proceeding in favor of litigation in the Ohio State Court.  CGIC
argues that it should not have to defend claims regarding the
same assets and transfers in two different fora, which would
drain the resources of the CGIC liquidation estate.  It argues
that allowing the Second Action to proceed also risks the
possibility of inconsistent results.

A stay of proceedings might be warranted apart from
considerations of proper constitutional adjudication or regard

-17-

for federal/state relations when, for example, the basis is one of wise judicial administration.  E.g., Colorado River, 424 U.S. at 817 ("These principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'.") (citation omitted).  Given the obligation of the federal courts to exercise the jurisdiction given them, however, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention."  Id. at 818.  For the same reasons that abstention is not appropriate, a stay of these proceedings is not warranted.

## III. CONCLUSION

For the reasons set forth above, the Court will deny the Motion of CGIC to dismiss the Second Action.

An appropriate order is attached.

BY THE COURT:

Dated: September 23, 2005

Mary F. Walrath
United States Bankruptcy Judge

-18-

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PRS INSURANCE GROUP, INC., | ) | Case Nos. 00-4070 (MFW) |
| et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| SEAN C. LOGAN, the Chapter 11 | ) | |
| Trustee of PRS INSURANCE | ) | |
| GROUP, INC., et al., | ) | Adv. Proc. No. 05-50818 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CREDIT GENERAL INSURANCE | ) | |
| COMPANY and CREDIT GENERAL | ) | |
| INDEMNITY COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

O R D E R

AND NOW, this **8th** day of **DECEMBER, 2005,** upon consideration
of the Motion for Reconsideration filed by Credit General
Insurance Company and Credit General Indemnity Company, and the
response thereto of the Trustee, it is hereby

**ORDERED** that the Motion is **DENIED.**

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc:  Steven K. Kortanek, Esquire[1]

_____

    [1]  Counsel is to distribute a copy of this Order on all
interested parties and file a Certificate of Service with the
Court.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PRS INSURANCE GROUP, INC., | ) | Case Nos. 00-4070 (MFW) |
| et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| SEAN C. LOGAN, the Chapter 11 | ) | |
| Trustee of PRS INSURANCE | ) | |
| GROUP, INC., et al., | ) | Adv. Proc. No. 05-50818 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CREDIT GENERAL INSURANCE | ) | |
| COMPANY and CREDIT GENERAL | ) | |
| INDEMNITY COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION[1]

Before the Court is the Motion filed by the Liquidator of
Credit General Insurance Company and Credit General Indemnity
Company (collectively "CGIC") to Reconsider the Court's
Memorandum Opinion and Order denying its Motion to Dismiss or
Stay the above adversary action.  For the reasons stated below,
the Court will deny the Motion.

I.    BACKGROUND

The facts underlying this case are detailed in the Court's

_____

[1]  This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052.

earlier Memorandum Opinion and will not be repeated here.  <u>See</u>
<u>Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Group)</u>, 331 B.R.
580 (Bankr. D. Del. 2005).

## II.   DISCUSSION

CGIC seeks reconsideration of the Court's Memorandum Opinion
and Order to correct a factual misstatement; to correct
"overlooked points" concerning CGIC's filing of a proof of claim;
to correct an error of law in misinterpreting the intent of the
Bankruptcy Code as it applies to defenses to proofs of claim
under section 502(d); to correct an error of law in concluding
that preferential and fraudulent transfer causes of action under
the Bankruptcy Code are within the exclusive jurisdiction of the
bankruptcy courts; and to clarify the Court's ruling on its
interpretation of the Ohio insurer liquidation statutes and the
applicability of a stay to this adversary proceeding.

### A.   Standard of Review

A motion for reconsideration is not specifically addressed
in the Federal Rules of Civil Procedure; rather, such motions
generally fall within the parameters of Rule 59(e), which allows
a party to file a motion to alter or amend a judgment.  Fed. R.
Bankr. P. 9023; 12 <u>Moore's Federal Practice - Civil</u> § 59.30[2][a]
(3rd ed. 2005) ("[A] Rule 59(e) motion involves the
reconsideration of matters properly encompassed in a decision on

the merits."). A Rule 59(e) motion may be granted to correct a clear legal error. E.g., United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003). A court may also grant a motion for reconsideration "if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension." Stanziale v. Nachtomi, No. 01-403, 2004 U.S. Dist. LEXIS 15664, at *2-3 (D. Del. Aug. 6, 2004).

B. Factual Misstatement

CGIC argues that the Court made a factual misstatement in the Background section of the Memorandum Opinion when it stated that: "ODI engineered the transfer of approximately $20 million in assets to CGIC for little or no consideration." CGIC contends that the Court should have clarified that the statement was simply a reiteration of the facts as set forth in the Trustee's complaint and not a finding of fact.

CGIC is correct that the Court's statement was not establishing a conclusive fact. Rather, the statement was made in the context of CGIC's motion to dismiss. Thus, the Trustee's allegation was taken to be true only for the limited purpose of ruling on the motion to dismiss. E.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (stating that in reviewing a motion to dismiss, a court must accept as true all the factual

-3-

allegations in the complaint as well as the reasonable inferences that can be drawn from them).

The Court believes, however, that the Memorandum Opinion is clear on this point.  Logan, 331 B.R. at 585.  Therefore, CGIC's motion for reconsideration on this basis will be denied.

      C.   Overlooked Points

CGIC seeks reconsideration of the Court's Memorandum Opinion and Order on the basis that the Court overlooked certain points when it addressed issues surrounding CGIC's filing of its proof of claim.  Namely, CGIC asserts that the Court ignored the fact that (1) CGIC had no choice but to file a proof of claim, which it did only as a defensive measure, (2) filing a proof of claim does not always constitute a "waiver" of jurisdiction and consent to determine the merits of the proof of claim, and (3) parties cannot waive subject matter jurisdiction by filing a proof of claim.  The Court did not ignore these points; they simply have no merit.

First, CGIC did have a choice in filing its proof of claim. CGIC could have chosen not to file a proof of claim, although it would have foregone any distribution from the Debtor's estate. When CGIC chose to file a claim, however, the Trustee was required to object to that claim or CGIC would have had an allowed $45 million claim against the bankruptcy estate.  11 U.S.C. § 502(a) (a duly filed proof of claim is deemed allowed in

-4-

the absence of an objection).  Despite CGIC's characterization of
its proof of claim, asserting a $45 million claim against the
estate is not "defensive."

Second, as the Court concluded in the Memorandum Opinion,
the filing of the proof of claim did constitute a waiver of any
objection to the exercise of jurisdiction by the Bankruptcy Court
over CGIC for purposes of considering whether to allow the claim
as filed.  See, e.g., Logan, 331 B.R. at 586 and cases cited
therein.  Apparently, CGIC is arguing that such a waiver is a
waiver of any objection to the Court exercising personal
jurisdiction over CGIC and is not a waiver of subject matter
jurisdiction.

CGIC argues thirdly that parties cannot waive an impediment
to subject matter jurisdiction.  See, e.g., Insurance Corp. of
Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702
(1982) ("[N]o action of the parties can confer subject-matter
jurisdiction upon a federal court.  Thus, the consent of the
parties is irrelevant, principles of estoppel do not apply, and a
party does not waive the requirement by failing to challenge
jurisdiction early in the proceedings.").

While the Court did not distinguish between the two, it is
clear that the Court did conclude that it had subject matter
jurisdiction over the adversary as well as personal jurisdiction
over CGIC.  See Logan, 331 B.R. at 586.  The adversary complaint

-5-

seeks to determine the validity of the Trustee's counterclaims to CGIC's claim and, therefore, whether that claim should be an allowed claim against the bankruptcy estate pursuant to section 502(d).

Regardless of what court determines the underlying merits or amount of a claim, the allowance of that claim and the amount to be distributed from the estate on that claim is the exclusive province of the bankruptcy court if a proof of claim has been filed in the bankruptcy court.  E.g., Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 404 (4th Cir. 1992) ("[N]either Virginia law nor the partnership agreement governs how the bankruptcy court must distribute assets."); In re D. M. Barber, Inc., 13 B.R. 962, 965 (Bankr. N.D. Tex. 1981) (holding that the bankruptcy court "retains the exclusive jurisdiction to determine the extent to which any such proof of claim should be allowed and priority treatment accorded it under the distribution hierarchy set forth in the Bankruptcy Code."); 4 Collier on Bankruptcy ¶ 502.030[1][a] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2005) ("Regardless of the method chosen for liquidation of a claim, the bankruptcy court always retains the jurisdiction and sole right to determine the 'allowability' of the claim under the applicable standards set forth in section 502.").

Consequently, the Court did conclude that it had both personal and subject matter jurisdiction over the adversary

proceeding and that the McCarran-Ferguson Act was not implicated because the Trustee was not seeking affirmative recovery from CGIC.   The Court is only being asked to determine whether CGIC received a fraudulent transfer or preference which would preclude allowance of its claim in this bankruptcy case.   Therefore, CGIC's motion for reconsideration on this point will be denied.

D.   Section 502(d)

CGIC argues that it cannot exercise any option to return a potential preference or fraudulent conveyance to the estate until the Ohio Court allows that claim.   Thus, CGIC contends that the Court's application of section 502(d) unfairly punishes it because CGIC, its policyholders, and its creditors would be harmed if the Debtor was able to distribute the assets of the Debtor's estate to other creditors with allowed claims before the Ohio Court made its determination of the percentage payout on the Trustee's preference and fraudulent conveyance claims, if any.

This adversary proceeding only seeks to establish the predicate for disallowing CGIC's proof of claim under section 502(d).   Nothing prevents CGIC from raising this issue in connection with the Trustee's objection to CGIC's proof of claim in the main case.   The Motion for reconsideration on this point will, therefore, be denied.

E.   Exclusive Jurisdiction over Bankruptcy Causes of Action

CGIC contends that the Court made a clear legal error when

-7-

it stated that it had exclusive jurisdiction over the preference
and fraudulent transfer actions brought under the Bankruptcy Code
and that the Ohio Court did not have jurisdiction.  CGIC argues
that section 1334(a) of title 28 grants exclusive jurisdiction to
the bankruptcy courts over cases, but not adversary proceedings
that arise under the Bankruptcy Code.  Pursuant to section
1334(b), CGIC argues that the Ohio Court has concurrent
jurisdiction over this adversary proceeding.  E.g., In re
Combustion Eng'g, Inc., 391 F.3d 190, 226 n.38 (3d Cir. 2005)
(stating that section 1334(a) only refers to the bankruptcy
petition and that the term proceeding as used in section 1334(b)
includes all adversary proceedings and contested matters); 1
Collier on Bankruptcy ¶ 3.01[4] (Alan N. Resnick & Henry J.
Sommer eds. 15th ed. rev. 2005) ("'Cases' under title 11 are to
be distinguished from civil proceedings arising under title 11 or
civil proceedings related to or arising in title 11 cases.  The
former are the subject of section 1334(a), while the latter are
covered by section 1334(b).").

     Section 1334, as applicable to this case,[2] states:

     (a) Except as provided in subsection (b) of this
     section, the district courts shall have original and
     exclusive jurisdiction over all cases under title 11.

     (b) Notwithstanding any Act of Congress that confers

_____

     [2]  Section 1334 has been amended by the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, but that
amendment applies only to cases filed after April 20, 2005.

> exclusive jurisdiction on a court or courts other than
> the district courts, the district courts shall have
> original but not exclusive jurisdiction of all civil
> proceedings arising under title 11, or arising in or
> related to cases under title 11.
>                             . . .
> (e) The district court in which a case under title 11
> is commenced or is pending shall have exclusive
> jurisdiction of all of the property, wherever located,
> of the debtor as of the commencement of such case, and
> of property of the estate.

28 U.S.C. § 1334.

Thus, CGIC is correct that, in general, the Bankruptcy Court
does not have exclusive jurisdiction of matters arising in,
under, or related to cases under title 11 but only has exclusive
jurisdiction over bankruptcy cases under title 11.  However, that
does not establish the predicate for the Ohio Court having
jurisdiction over the causes of action stated in the Trustee's
Complaint.  Those actions arise under sections 547 and 548 of
title 11.  There is no authority cited by CGIC that would grant
jurisdiction to the Ohio Court over those matters.

CGIC cites the principal of concurrent sovereignty which
provides that state courts enjoy concurrent jurisdiction over
certain federal causes of action.  E.g., Gulf Offshore Co., Div.
of Pool Co. v. Mobil Oil Corp., 453 U.S. 473, 477-48 (1981)
(holding that state court had jurisdiction to address personal
injury claims brought under the federal Outer Continental Shelf
Lands Act).  The Court explained this principle as follows:

> The general principle of state-court jurisdiction
> over cases arising under federal laws is

-9-

> straightforward: state courts may assume subject-matter
> jurisdiction over a federal cause of action absent
> provision by Congress to the contrary or disabling
> incompatibility between the federal claim and state-
> court adjudication. . . .  The two exercise concurrent
> sovereignty, although the Constitution limits the
> powers of each and requires the States to recognize
> federal law as paramount.  Federal law confers rights
> binding on state courts, the subject matter
> jurisdiction of which is governed in the first instance
> by state laws.

453 U.S. at 477-78.

That principle, however, is subject to limitations set by

the Constitution, Congress, and state law.  Thus, "the

presumption of concurrent jurisdiction can be rebutted by an

explicit statutory directive, by unmistakable implication from

legislative history, or by a clear incompatibility between

state-court jurisdiction and federal interests."  Id. at 478.

Section 1334(a) and (e) are statutory directives by Congress

that deprive state courts of jurisdiction over bankruptcy cases

themselves and property of the estate.  CGIC argues, however that

the absence of exclusive jurisdiction in the bankruptcy courts in

section 1334(b) over matters arising in and related to bankruptcy

cases evidences the intent of Congress to allow concurrent

jurisdiction over those matters.

The purpose of section 1334 is to centralize proceedings in

the bankruptcy court.  E.g., Sunshine Dev. v. FDIC, 33 F.3d 106,

114 (1st Cir. 1994).  In fact, "[t]he jurisdictional grant in

§1334(b) was a distinct departure from the jurisdiction conferred

-10-

under previous Acts, which had been limited to either possession of property by the debtor or consent as a basis of jurisdiction." Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995). By enacting that section, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Pacor, Inc. v. Higgins (In re Pacor, Inc.), 743 F.2d 984, 994 (3d Cir. 1984). Indeed, "[s]ection 1334(b) is primarily an expansion of bankruptcy courts' jurisdiction rather than an avenue for state courts to address issues traditionally within the realm of the bankruptcy courts." Halas v. Platek, 239 B.R. 784, 792-93 (N.D. Ill. 2004).

Even assuming that a state court could have concurrent jurisdiction over proceedings that arise under or in the bankruptcy case, some proceedings exist that are so intimately tied to the bankruptcy case itself as to prohibit any exercise of concurrent jurisdiction by a state court. As stated by the Court in Lowenbraun v. Canary:

> The facts that form the basis for Appellant's state court claims seem to strike at the heart of the administration of the bankruptcy estate. The bankruptcy court has a predominant interest in regulating the conduct of those involved in the bankruptcy proceedings. This Court agrees with the bankruptcy court that to allow a state court to pass judgment on the conduct of the bankruptcy trustee and his counsel may well be contrary to the bankruptcy court's exclusive jurisdiction of such matters.

No. 04-627, 2005 U.S. Dist. LEXIS 10401, at *5-6 (W.D. Ky. May

27, 2005) (holding that lawsuit alleging state law causes of action against trustee's attorney was core proceeding and discretionary abstention was not appropriate); Halas, 239 B.R. at 792-93 (holding that "allowing state courts to impose §362[(k)] sanctions, a penalty so closely intertwined with the bankruptcy case itself, would undermine Congress' intent to have one uniform bankruptcy system.").

The allowance and disallowance of claims, which are core matters arising under or in the Bankruptcy Code, fall within the exclusive jurisdiction of the bankruptcy courts. Johnson, 960 F.2d at 404 ("[E]ven though the existence of a claim is controlled by state law, the allowance or disallowance of a claim in bankruptcy is a matter of federal law left to the bankruptcy court's exercise of its equitable powers."); 4 Collier on Bankruptcy ¶ 502.030[1][a] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2005) ("[T]he bankruptcy court always retains the jurisdiction and sole right to determine the 'allowability' of the claim under the applicable standards set forth in section 502.").

Thus, there is ample authority for the Court's conclusion that it had exclusive jurisdiction over the Trustee's adversary proceeding, which seeks to avoid allegedly fraudulent and preferential transfers under sections 547 and 548 as a predicate for disallowance of CGIC's claim under section 502(d) of the

-12-

Bankruptcy Code.  The Motion for reconsideration will also be denied on this basis.

F.   Ohio Law

CGIC also argues that the Court misinterpreted Ohio law when it noted that an Ohio statute provides a mechanism whereby the Ohio Court may stay its proceedings if it finds that "any action should as a matter of substantial justice be tried in a forum outside [Ohio]."  Logan, 331 B.R. at 589 (citing Ohio Rev. Code Ann. § 3903.04(D)).  The Court's decision not to abstain or stay the Trustee's adversary proceeding, however, was independent of any analysis of Ohio law.  The Court determined that abstention was not appropriate under the Younger and Burford cases cited by CGIC.  Therefore, the Motion for reconsideration will be denied on this point as well.

G.   Stay of Proceedings

CGIC also requests that the Court reconsider its decision to deny a stay of the Trustee's adversary proceeding in light of the Third Circuit's decision in Feige v. Sechrest, 90 F.3d 846 (3d Cir. 1996).  The Court denied CGIC's request for a stay of the Trustee's adversary proceedings because (1) the Ohio Court did not have jurisdiction over the Trustee's section 547 and 548 causes of action, (2) the Trustee's claims were legal rather than equitable in nature, and (3) the Court takes seriously its virtually unflagging obligation to exercise the jurisdiction

-13-

granted to it by Congress.

Feige is inapplicable to this case because in that case the state court had jurisdiction over the causes of action thereby justifying a stay of the federal proceedings.  Id. at 849.  The Third Circuit expressly found that "the Commonwealth Court has jurisdiction over the claims, which leads inexorably to the conclusion that there is adequate state court review for purposes of Burford abstention."  Here, the Ohio Court does not have jurisdiction over the Trustee's adversary proceeding.  Moreover, even if the Ohio Court had jurisdiction over this adversary proceeding, a stay would not be appropriate because the Trustee is not seeking any affirmative recovery from CGIC, but is only seeking to determine whether the proof of claim that CGIC filed in the Debtor's bankruptcy case should be allowed.  In contrast, in Feige the Court stayed an action which sought to remove assets from the liquidating insurer's estate.  Id. at 849.  The Motion for reconsideration on this basis will also be denied.

III. CONCLUSION

    For the reasons set forth above, the Court will deny the Motion of CGIC to reconsider the Court's earlier Memorandum Opinion and Order.

-14-

An appropriate order is attached.

BY THE COURT:

Dated: December 8, 2005

*[signature: Mary F. Walrath]*

Mary F. Walrath
United States Bankruptcy Judge

# EXHIBIT C



Not Reported in F.Supp.                                                  Page 1
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
**(Cite as: 1992 WL 68613 (E.D.Pa.))**

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
In re Daniel J. SULLIVAN, debtor.
**Civ. A. No. 91-5501.**

**March 31, 1992.**

Allen B. Dubroff, Thomas J. Maiorino, Astor, Weiss & Newman, Philadelphia, Pa.,
for appellant.

Michael L. Temin, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for
appellee.

Allen B. Dubroff, Thomas J. Maiorino, Astor, Weiss & Newman, Philadelphia, Pa.,
for debtor.

Frederick Baker, pros se.

*MEMORANDUM*

O'NEILL, District Judge.

I. *Introduction*

*1 Debtor Daniel J. Sullivan appeals from an Order of Chief Bankruptcy Judge
Thomas M. Twardowski denying Sullivan's motion to disqualify the law firm Wolf,
Block, Schorr & Solis-Cohen as counsel to Robert Taylor, the trustee of Sullivan's
estate.   Sullivan argues that because of Wolf, Block's past representations of
parties against whom he currently is in litigation, and because Wolf, Block is a
creditor of MMRT, the firm has interests adverse to the estate and is not
disinterested for the purposes of Section 327(a) of the Bankruptcy Code.   For the
reasons stated below, I conclude that the Order of the Bankruptcy Court should be
affirmed.

II. *Factual Background*

On July 16, 1987, Sullivan filed a voluntary petition pursuant to Chapter 11 of
the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District
of Pennsylvania.   In January, 1990, Judge Twardowski issued an order appointing
Robert Taylor as Trustee in the proceeding.   Soon thereafter, the Judge issued an
order authorizing Taylor to employ Wolf, Block as his attorneys during the Chapter
11 proceedings.

In March, 1990, Sullivan moved to disqualify Wolf, Block from serving as counsel
to Taylor, alleging that Wolf, Block is not a disinterested person under Section
327(a) of the Bankruptcy Code and that Wolf Block holds or represents interests
adverse to the Sullivan estate.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 2
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
**(Cite as: 1992 WL 68613 (E.D.Pa.))**

Specifically, appellant Sullivan asserts that Wolf, Block is not disinterested because of the firm's former representation of MMRT Associates, its representation of Elliott Goldberg and the Goldberg Group, and its standing as a creditor of MMRT. MMRT and Sullivan currently are involved in litigation regarding an interest in Columbus Plaza Associates, which bought an Atlantic City property from MMRT.    MMRT has sued Sullivan seeking a declaration that Sullivan received a five percent interest in Columbus Plaza Associates without consideration and that said interest belongs to MMRT.    MMRT also seeks to impose a constructive trust against the $610,000 settlement proceeds received by Sullivan in the Columbus Plaza Associates settlement.    In a counterclaim, Sullivan has asserted that MMRT owes him additional money as a result of the sale by MMRT of its real estate to Columbus Plaza Associates.    Sullivan has asserted as well that Elliott Goldberg and the Goldberg Group are recipients of funds paid in the Columbus Plaza Associates settlement and would gain by a defeat of Sullivan's counterclaim.

H. Robert Fiebach, a partner of Wolf, Block, represented MMRT in connection with MMRT's attempts to sell its property to Columbus Plaza Associates in 1980 or 1981 and after MMRT's bankruptcy (in which Fiebach did not represent MMRT), from 1984 to 1986 or 1987.    Appellee Taylor points out that Fiebach was not aware of any dispute between Sullivan and MMRT and was not involved in the transaction by which Sullivan acquired his note from Columbus Plaza Associates. [FN1]  Taylor also states that Fiebach represented the Goldberg group sporadically, in non-complex matters, and that the representation ended in 1989, before Sullivan filed for bankruptcy.

*2 Counsel for Taylor informed the Court by letter dated March 25, 1992 that MMRT Associates owes Wolf, Block $4,093.60, which represents the balance of a bill submitted by Wolf, Block to MMRT dated November 14, 1988 in the amount of $43,117. However, at a conference I held with counsel for Sullivan and Taylor on March 30, 1992, counsel for Taylor has represented to the Court that it will waive the remaining fees it is owed by MMRT.

On July 18, 1991, Judge Twardowski entered an Order denying Sullivan's motion to disqualify Wolf, Block.    Judge Twardowski concluded that Wolf, Block does not hold or represent an interest adverse to the estate in violation of Section 327(a) of the Bankruptcy Code and that Wolf, Block is "disinterested" within the meaning of Section 327(a).    Judge Twardowski also concluded that the prior representations by Fiebach did not violate the Pennsylvania Rules of Professional Conduct. *In re Daniel J. Sullivan,* No. 87-03570T (Bankr.E.D.Pa. July 18, 1991).

III. *Standard of Review*

I first must determine the district court's standard of review of a bankruptcy court's decision.    Under Bankr.Rule 8013, a district court may set aside a bankruptcy court's factual findings only if the findings are clearly erroneous. 11 U.S.C.A.Bankr.Rule 8013; *J.P. Fyfe, Inc. v. Bradco Supply Corp., 891 F.2d 66, 69 (3d Cir.1989).*    The "clearly erroneous" standard, however, does not apply to questions of law. *Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 103 (3d Cir.1981); In re Philadelphia Athletic Club, Inc., 20 Bankr. 328 (E.D.Pa.1982).*    The bankruptcy court's legal conclusions are subject to the district court's plenary review. *J.P. Fyfe,* 891 F.2d at 69; *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988); *Frymire v. Paine Webber, Inc.,* 107 Bankr. 506, 509 (E.D.Pa.1989) (bankruptcy court's legal conclusions may not be approved without district court's independent determination of legal questions).

®  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 3
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
(Cite as: 1992 WL 68613 (E.D.Pa.))

The Court of Appeals for the Third Circuit has held that the question of whether counsel should be disqualified from representing a party because of an alleged conflict of interest is a legal one subject to plenary review.  *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1088 (3d Cir.), *cert. denied*, 429 U.S. 830 (1976).  In addition, this Court has previously held that a bankruptcy court's ruling on whether counsel to a trustee should be disqualified pursuant to Section 327(a) of the Bankruptcy Code is a legal conclusion "not entitled to a presumption of correctness." *Philadelphia Athletic Club*, 20 Bankr. at 331.

IV. *Discussion*

A. *Jurisdiction*

Pursuant to 28 U.S.C. § 1334(a), the district court has appellate jurisdiction over final judgments, orders and decrees of the bankruptcy court. *In re Allegheny Int'l., Inc.*, 107 Bankr. 518 (W.D.Pa.1989); *Philadelphia Athletic Club*, 20 Bankr. at 332.  With leave of court, this Court also has jurisdiction over interlocutory orders and decrees. *Id.*

*3 Sullivan asserts that in the bankruptcy context Judge Twardowski's Order should be construed as final, but that even if I conclude that it is interlocutory it is within my discretion to hear an appeal of such an Order. Taylor argues that the Bankruptcy Judge's Order refusing to disqualify counsel is interlocutory and not appealable to the district court because Sullivan did not file a motion for leave to appeal.

1. *Finality of Bankruptcy Order*

In the context of general civil litigation, orders denying a motion for disqualification of an attorney are considered interlocutory and are not subject to appeal prior to resolution of the merits of the dispute. *Firestone Tire and Rubber Co. v. Risjord*, 449 U.S. 368 (1981).

In approaching the finality question, however, the Court of Appeals has recognized that "[t]he unique characteristics of bankruptcy cases have led us to 'consistently consider[ ] finality in a more pragmatic and less technical way in bankruptcy cases than in other situations.' " *In re BH & P, Inc.*, 949 F.2d 1300, 1306 (3d Cir.1991), quoting *F/S Airlease II, Inc., v. Simon*, 844 F.2d 99, 103 (3d Cir.), *cert. denied*, 488 U.S. 852 (1988).

Despite this pragmatic approach, the Court of Appeals also has expressed a "general reluctance to adopt an expansive interpretation of finality." *In re Brown*, 803 F.2d 120, 122 (3d Cir.1986).  Therefore, orders that do not fully adjudicate a specific adversary proceeding or that require further factual development are governed by the ordinary finality precepts of routine civil litigation. *United States v. Nicolet, Inc.*, 857 F.2d 202, 206-7 (3d Cir.1988); *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir.1988); *Allegheny Int'l.*, 107 Bankr. at 521.  Moreover, the relaxed concept of finality only applies where the order on appeal raises an issue peculiar to bankruptcy. *Nicolet*, 857 F.2d at 207; *Allegheny Int'l.*, 107 Bankr. at 521.  Therefore, the traditional finality requirements apply where the order does not affect either the debtor's estate or the other creditors involved in the proceeding. *Brown*, 803 F.2d at 123.

Several courts have held that orders by bankruptcy judges concerning the

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                          Page 4
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
(Cite as: 1992 WL 68613 (E.D.Pa.))

appointment or disqualification of counsel are not final. *See In re Delta Services Industries,* 782 F.2d 1267 (5th Cir.1986); *Allegheny Int'l.,* 107 Bankr. at 522; *Philadelphia Athletic Club,* 20 Bankr. at 332; *In re Lee Way Holding Co.,* 102 Bankr. 616 (S.D.Ohio 1988).

In this case, Judge Twardowski's Order does not fully adjudicate a specific adversary proceeding. Also, the order deals with the disqualification of counsel, which is not an issue peculiar to bankruptcy. Nor does the order affect the debtor's estate or the other creditors involved in the proceeding. Accordingly, I conclude that Judge Twardowski's Order denying Sullivan's motion to disqualify counsel is interlocutory and not appealable as of right.

2. *Appealability of Interlocutory Order*

*4 Despite the fact that the Order is interlocutory, as stated above, pursuant to 28 U.S.C. § 158(a), district courts have discretion to grant leave to appeal from interlocutory orders of bankruptcy courts. *Universal Minerals,* 669 F.2d at 100-101. [FN2]

Interlocutory appeals are allowed when three requirements are satisfied: (1) a controlling question of law is involved; (2) the question is one where there is substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the ultimate termination of the litigation. *In re Neshaminy Office Bldg. Associates,* 81 Bankr. 301, 303 (E.D.Pa.1987), citing 28 U.S.C. § 1292(b).

In *Philadelphia Athletic Club,* this Court exercised its discretion by entertaining an interlocutory appeal of a bankruptcy judge's Order refusing to disqualify counsel because the question presented by such an appeal is "too important to be denied review and too independent of the cause itself to require that ... consideration be deferred." *Id.,* at 332, citing *Kramer v. Scientific Control Corp.,* 534 F.2d at 1088 and *In re Fine Paper Antitrust Litigation,* 617 F.2d 22, 26 (3d Cir.1980). *See also Paolino,* 60 Bankr. at 828-29 (immediate review of bankruptcy judge's order appointing trustee is preferable in view of significance of such an order); *RPC Corp.,* 114 Bankr. 116, 119 (M.D.N.C.1990) (district court will exercise its discretion and grant leave to appeal bankruptcy court's Order denying attorney disqualification motion because appeal is dispositive of validity of counsel's employment and no purpose is served in delaying appeal).

The issue here is identical to that in *Philadelphia Athletic Club.* The question presented is independent of the cause of action itself and is a significant one. Moreover, the question presented involves a controlling issue of law where there is substantial ground for difference of opinion. An immediate appeal would also materially advance the ultimate termination of the litigation. Finally, no purpose would be served in delaying the appeal. Accordingly, I conclude that the requirements for hearing interlocutory appeals have been satisfied and I will grant leave to appeal.

B. *Disqualification under the Bankruptcy Code*

Section 327(a) of the Bankruptcy Code provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                              Page 5
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
**(Cite as: 1992 WL 68613 (E.D.Pa.))**

11 U.S.C.A. § 327(a) (West 1990).

The Code defines "disinterested person" as a person that "does not have an interest materially adverse to the interest of the estate ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason." 11 U.S.C.A. § 101(14)(E).

**\*5** The standards for disinterestedness are to be rigidly applied. *In re Jartran, Inc.,* 78 B.R. 524, 526 (Bankr.N.D.Ill.1987). In *Philadelphia Athletic Club,* this Court stated:

[T]he definition of disinterested person ... promotes the policy that as a general principle professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.

*Philadelphia Athletic Club,* 20 Bankr. at 334 (quoting 1 Collier Bankruptcy Manual § 101.13 (1981)). [FN3]

While the test of disinterestedness is to be applied rigidly, it is not to be applied blindly. *Jartran,* 78 Bankr. at 526. The appropriate query is "whether counsel possesses an interest 'such as would color the requisite independent judgment and impartial attitude.' " *Id.,* quoting *In re O'Connor,* 52 Bankr. 892, 899 (Bankr.W.D.Okla.1985). It is not sufficient that the trustee and his counsel actually be disinterested; the appearance of interestedness must also be avoided. *Philadelphia Athletic Club,* 20 Bankr. at 335, citing *In re Perry, Adams & Lewis Securities, Inc.,* 5 Bankr. 63, 64 (Bkrtcy.W.D.Mo.1980).

Sullivan relies on *Philadelphia Athletic Club,* in which this Court, pursuant to Section 327(a) of the Bankruptcy Code and the Code of Professional Responsibility, disqualified a law firm from its representation of a trustee in a bankruptcy proceeding because counsel had previously represented a party that claimed to own a fifty percent interest in the corporation that held the shares of the debtor corporation. In that case, the dispute concerning ownership of the corporation holding the shares of the debtor was ongoing at the time of the bankruptcy proceeding. *Id.,* at 330-331.

The Court held that because of its prior representation the law firm had an interest materially adverse to the estate of the debtor:

[A]n attorney for the trustee should not place himself in a position where he may be required to choose between conflicting interests or duties.... [T]he independence and impartiality of [the law firm's] judgment or advice to the trustee regarding the interests of the debtor will be impaired by [its] prior representation.... When performing [its] duties to the estate, [the firm] may be tempted, perhaps unconsciously, to cater to the interests of [its] former clients, rather than to make decisions or give advice solely with the best interests of the estate in mind.... Thus, [the firm] has an interest which is at least potentially adverse to the estate of the debtor.

Id., at 337-38.

Taylor relies on *In re Highway Truck Drivers & Helpers Local Union # 107,* 86

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 6
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
**(Cite as: 1992 WL 68613 (E.D.Pa.))**

Bankr. 404 (Bankr.E.D.Pa.1988). In that case, the bankruptcy court refused to
disqualify a law firm or one of the firm's partners from serving as counsel to
several creditors in a bankruptcy proceeding; the partner had represented the
debtor at one meeting prior to the debtor's filing for Chapter 11 relief and prior
to the time when the attorney worked at the firm representing the creditors:
"[G]iven the limited scope and duration of [the attorney's] prior representation of
the debtor more than three years ago ... [the attorney] did not acquire
confidential information or material substantially related to the representation of
the ... creditors." _Id., at 413._

*6 Although _Highway Truck Drivers & Helpers_ involved a potential conflict of
interest, the Court there was concerned about protecting the potential confidences
of the debtor from becoming known to the attorneys for the creditor; the case did
not involve the questions whether counsel for the trustee was disinterested or held
an interest materially adverse to the estate. Thus, § 327(a) of the Bankruptcy
Code was not even in issue; in reaching its decision, the Court relied on the Code
of Professional Responsibility.

Despite several factual differences, _Philadelphia Athletic Club_ is more directly
on point. In that case, the Court's concern was that counsel for the trustee
would not be able to be impartial or disinterested as required by § 327(a) of the
Bankruptcy Code because of prior representations of a creditor in the bankruptcy
proceeding.

_Philadelphia Athletic Club_ is distinguishable factually from the instant case,
however. In that case, the law firm's prior dealings with the creditor were more
directly related to the bankruptcy dispute in which it had been appointed trustee
than in the instant case. Here, Wolf, Block's representation of MMRT Associates
ended more than four years prior to the bankruptcy proceeding. There is evidence
in the record that its representation of the Goldberg interests was sporadic and
related to isolated matters and that the representation ended in 1989.

In addition, Mr. Fiebach testified in his deposition that he was not aware of any
dispute between Sullivan and MMRT. Therefore, assuming without deciding that
Sullivan's dispute with MMRT does in fact relate to Wolf, Block's prior
representation of MMRT, such relation is sufficiently remote so as not to require
Wolf, Block's disqualification as counsel to the trustee in this action.

Before Wolf, Block represented to the Court that it agreed to waive the money owed
it by MMRT, I was concerned about Wolf, Block's status as a creditor of MMRT.
Although MMRT did not owe Wolf, Block a great deal of money, the fact that any
money was owed at all meant that Wolf, Block could have benefitted were MMRT to be
successful in its litigation against Sullivan. However, as Wolf, Block is no
longer a creditor of MMRT and no longer stands to benefit if MMRT is successful in
its case against Sullivan, I conclude that Wolf, Block should not be disqualified
for this reason. [FN4]

Therefore, despite the rigid standards for disinterestedness under Section 327(a),
which requires that counsel for the trustee be free of "the slightest personal
interest which might be reflected in [its] decisions concerning matters of the
debtor's estate," _Philadelphia Athletic Club, 20 Bankr. at 334,_ I conclude that the
Order of the Bankruptcy Court should be affirmed.

_ORDER_
AND NOW, this 31st day of March, 1992, upon consideration of appellant Daniel J.
Sullivan's appeal from an Order of the Honorable Thomas M. Twardowski, United

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 7
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
**(Cite as: 1992 WL 68613 (E.D.Pa.))**

States Bankruptcy Judge, denying Sullivan's motion to disqualify Wolf, Block,
Schorr & Solis-Cohen from serving as counsel to the trustee, for the reasons stated
in the accompanying memorandum, it is hereby ORDERED that the Order of the
Bankruptcy Court is AFFIRMED.

> FN1. The parties' briefs do not describe in detail the structure of the
> Columbus Plaza transaction but I do not need to know its details in order to
> decide the questions presented by this appeal.

> FN2. Although Sullivan did not move for leave to appeal, Rule 8003(c) of the
> Bankruptcy Code permits the District Court to treat a notice of appeal as a
> motion for leave to appeal and I will do so. *See In re Jablonski,* 88 Bankr.
> 652, 655 (E.D.Pa.1988); *In re Paolino,* 60 B.R. 828, 828-29 (E.D.Pa.1986);
> *In re RPC Corp.,* 114 Bankr. 116, 119 (M.D.N.C.1990).

> FN3. Taylor argues that in this jurisdiction the ethical rules governing
> attorneys' conflicts of interests provide the standards for disqualification
> of counsel.   In support of its proposition, Taylor cites *In re Highway Truck
> Drivers & Helpers Local Union # 107,* 86 Bankr. 404 (Bankr.E.D.Pa.1988), in
> which the Bankruptcy Judge based his decision refusing to disqualify counsel
> for a creditor on the Code of Professional Responsibility, subsequently
> superseded by the Rules of Professional Conduct.   In that case, the Judge
> did not consider whether the attorney should be disqualified under the
> Bankruptcy Code.   In this case, however, Sullivan has moved to disqualify
> Wolf, Block pursuant to Section 327(a) of the Bankruptcy Code.   Both Section
> 327(a) and Rule 1.9 of the Rules of Professional Conduct (dealing with
> conflicts involving former clients) protect against conflicts of interest,
> but they are designed to protect different entities.   Section 327(a) is
> designed to protect the interests of the estate;  Rule 1.9 is designed "to
> preserve the confidences of the former client." *See Reading Anthracite Co.
> v. Lehigh Coal & Navigation Co.,* 771 F.Supp. 113, 115 (E.D.Pa.1991).
> Because I conclude that Wolf, Block should not be disqualified pursuant to
> Section 327(a), I do not have to pass upon Taylor's contention that the Rules
> control.

> FN4. There is no contention that the existence of this debt influenced Wolf,
> Block in its representation of the trustee prior to forgiveness of the debt.

Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)

### Motions, Pleadings and Filings (Back to top)

- 2:91cv05501 (Docket) (Aug. 28, 1991)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Ann H. Womer Benjamin, | : | |
| Ohio Superintendent of Insurance, | | |
| in her capacity as Liquidator of | : | Case No. 2:04-CV-00184 |
| Credit General Insurance | | |
| Company and Credit General | : | Judge Smith |
| Indemnity Company, | | |
| | : | Magistrate Judge Abel |
| Plaintiff | | |
| | : | |
| v. | | |

John Hancock Financial Services,
Inc.,

      Defendant

**Order**

Plaintiff Ann H. Womer Benjamin, Ohio Superintendent of Insurance, in her

capacity as Liquidator ("Liquidator") for Credit General Insurance Company

and Credit General Indemnity Company ("CGIC") filed a complaint in the

Franklin County Court of Common Pleas on January 30, 2004 alleging breach of

contract, declaratory judgment and bad faith against defendant John

Hancock Financial Services, Inc. ("John Hancock"). John Hancock removed

the action to this Court on March 4, 2004 on the basis of 28 U.S.C. §§ 1332 and

1441. This action involves John Hancock's reinsurance coverage of CGIC

insurance policies. The Liquidator, pursuant to Ohio Revised Code § 3903.04(E)

of the Liquidation Act, has filed an action in the Liquidation Court to collect and

1

marshal the assets of the CGIC estate in an effort to protect and ensure payment of policyholder claims.

This matter is before the Court on plaintiff's April 5, 2004 motion to remand (doc. 8), defendant John Hancock's May 14, 2004 memorandum in opposition to the Liquidator's motion to remand (doc. 13), the Liquidator's May 25, 2004 reply in support of its motion to remand (doc. 15), John Hancock's June 2, 2004 motion for leave to file *instanter* sur-reply in response to the Liquidator's reply brief in support of her motion to remand (doc. 16), and the Liquidator's June 21, 2004 response in opposition to motion for leave to file *instanter* sur-reply (doc. 18).

## I.    **Arguments of the Parties**

### A.    **Plaintiff**

The Liquidator argues that the statutory scheme established by the Ohio General Assembly requires that such liquidation actions be prosecuted in the Liquidation Court, and judges of the Southern District of Ohio have consistently held that the federal court's diversity jurisdiction is reverse preempted by the Liquidation Act based on the McCarran-Ferguson Act, 15 U.S.C. § 1101 *et seq*.

The Liquidator also argues that disputes and actions against reinsurers directly involve the business of insurance and payments to policyholders are thus reverse preempted under the McCarran-Ferguson Act because the reinsurance

2

relationship is directly implicated by the Ohio insolvency and insurance regulatory scheme.

The Liquidator further argues that despite the presence of arbitration clauses in the contracts entered by CGIC and John Hancock, the Liquidator cannot be forced to arbitrate because Ohio law favors resolution of claims and defenses against an insolvent insured in the Liquidation Court. Absent express statutory authorization, Ohio law disfavors arbitration. The Liquidator maintains that it is the province of the Liquidation Court to determine whether Hancock's demands for arbitration are appropriate. Plaintiff argues that assuming the Federal Arbitration Act ("FAA") is applicable, it too is reverse preempted by the McCarran-Ferguson act to the extent that it conflicts with the Liquidation Act, because the dispute is inextricably part of the business of CGIC's insurance of policyholders.

In the alternative, the Liquidator argues that if this Court concludes that it has subject matter jurisdiction, it should abstain from exercising that jurisdiction under the *Burford* doctrine. Plaintiff maintains that the *Burford* doctrine protects complex state administrative schemes from undue interference by federal courts.

Finally, the Liquidator seeks the an award of costs, actual expenses and attorney fees incurred as a result of the removal pursuant 28 U.S.C. § 1447(c).

**B.     Defendant**

3

Defendant John Hancock argues that this action is one of first impression in this Court: whether the Franklin County Court of Common Pleas has exclusive jurisdiction to decide the enforceability of arbitration agreements contained in reinsurance contracts involving interstate commerce that the Liquidator has affirmed and under which she seeks to recover. John Hancock distinguishes the instant action from other decisions of this Court because there is already binding precedent in the Northern District of Ohio that the claims arising under one of the thirteen contracts at issue here are subject to arbitration. Judge O'Malley dismissed the prior action, brought by the Liquidator's predecessor in interest, and defendant argues that this determination has res judicata effect as to the one treaty and collateral estoppel effect as to the twelve others.

John Hancock argues that this Court's diversity jurisdiction and the FAA are not reverse preempted by the Ohio liquidation statutes under the McCarran-Ferguson Act, and the Liquidator's motion to remand must be denied. The reinsurance contracts contained agreements to arbitrate, and the Liquidator has affirmed these contracts.

John Hancock further argues that the Burford doctrine is not applicable to the instant case. Because this Court's jurisdiction is unimpaired, it has no discretion but to compel arbitration under the FAA.

Finally, defendant argues that the Liquidator's request for attorneys' fees, expenses and costs should be denied because the legal maneuverings of the

4

Liquidator that necessitated the removal petition. Further, the removal petition was not in defiance of clearly applicable precedent as plaintiff argues.

## II.    Discussion

As a preliminary matter, John Hancock's June 2, 2004 motion for leave to file *instanter* sur-reply in response to the Liquidator's reply brief in support of her motion to remand (doc. 16) is GRANTED.

McCarran-Ferguson Act. The Act provides that '[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). In enacting this section, Congress protected "state regulation . . . against *inadvertent* federal intrusion. . . [by] a federal statute that describes an affected activity in broad, general terms, of which the insurance business happens to constitute one part." *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 29 (1996) (emphasis in original).

Chapter 3909 of the Ohio Revised Code is "part of a complex and specialized administrative structure for the regulation of insurance companies from inception to dissolution." *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 494 (1993). It was intended to "protect[] the interests of insureds, claimants,

5

creditors, and the public generally" by vesting the Ohio Superintendent of Insurance with extensive powers to investigate and ensure the financial condition of insurers operating within the state. Ohio Rev. Code § 3903.02(D). The Franklin County Court of Common Pleas has sole jurisdiction over actions brought by the superintendent of insurance under the Liquidation Act. Ohio Rev. Code § 3903.04(E).

Section 2(b) of the McCarran-Ferguson Act established a three part test to determine whether state law preempts federal law: (1) the federal statute at issue must not specifically relate to the business of insurance; (2) the application of the federal law in question must invalidate, impair or supersede the corresponding state law; and, (3) the state law must be enacted for the purpose of regulating the business of insurance. *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993).

Defendant distinguishes other cases where the courts have found removal to be improper based on the McCarran-Ferguson Act from the instant case because the contracts on which the action is based contain arbitration clauses. However, the presence of the arbitration clauses do not impact whether or not removal was proper at the time the case was removed. John Hancock's reliance on Judge O'Malley's may 30, 2000 Memorandum and Order which held that CGIC's claims are subject to arbitration is misplaced because the issue

6

of whether the arbitration provision can be enforced against the Liquidator

against her wishes was not before the Court.

To some degree, both parties rely on *Benjamin v. Pipoly*, 155 Ohio App.

3d 171 (2003). In *Pipoly*, the court held:

> [W]hen a liquidator is appointed by court order, . . . she is not automatically bound by the pre-appointment contractual obligations of the insurer. To be so bound, the liquidator must affirmatively indicate her election to be responsible for the prior obligation of the former operators. Since [the liquidator] was not a party to [insurer's] employment agreements or the assignment thereof and was not a party to any of the mutual agreements to arbitrate, and because there is nothing in the record to demonstrate that she adopted any of these agreements and expressly assumed the provisions within these agreements may not be enforced against her.

*Id.* at 182 (footnote omitted). The court further stated:

> [W]e hold that where, as here, private arbitration impinges upon a broad statutory scheme that invests sweeping powers in an state official, enforcement of arbitration ipso facto violates public policy. Though the Superintendent of the Ohio Department of Insurance takes the place of the insolvent insurer for all practical purposes, it is clear from the statutory scheme that the General Assembly did not contemplate turning over the administration of liquidation proceedings and incidental actions to private arbitrators in forums shielded from public scrutiny, judicial review of which would be sharply limited.

*Id.* at 183. The *Pipoly* decision provides support for both parties' positions

regarding arbitration. However, this Court need not decide whether or not the

Liquidator, as a nonsignatory to the contract, is bound by the arbitration

provisions because she has affirmed the contract.

7

Federal Arbitration Act. Section 3 of Title 9 of the United States Code provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The Federal Arbitration Act does not confer subject matter jurisdiction on a district court. There must be an independent basis for federal subject matter jurisdiction for a district court to adjudicate a claim under the Federal Arbitration Act:

> In order to properly invoke either § 3 or 4 of the Act, it is inherent that this Court first have the requisite underlying jurisdiction, as well as be satisfied that in fact the parties had bound themselves to an agreement to arbitrate. The United States Arbitration Act grants both state and federal courts concurrent jurisdiction over disputes involving arbitration agreements. *Merrill Lynch, Pierce, Fenner, Etc. v. Haydu,* 637 F.2d 391 (5th Cir.1981). Specifically, the 5th Circuit stated:
>
> > ... [t]he Act alone is insufficient to confer federal jurisdiction: not only must the transactions involved constitute "interstate commerce" within the meaning of 9 U.S.C.A. § 2, but also an independent basis for jurisdiction such as diversity or a federal question must exist before a federal court may properly assume jurisdiction. *See Commercial Metals Co. v. Balfour, Guthrie & Co. Ltd,* 577 F.2d 264, 268-69 (5th Cir.1978) (discussing *Coastal States Gas Producing Co., et al. v. Producing Properties, Inc., et al.,* 203 F.Supp. 956 (S.D.Tex.1962)); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 408 (2d Cir.1959), *cert. dismissed per*

8

*stipulation,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

*H & M Charters, Inc. v. Reed,* 757 F. Supp. 859, 863 (S.D. Oh. 1991)(quoting *Merrill Lynch, Pierce, Fenner, Etc. v. Haydu,* 637 F.2d 391 (5th Cir. 1981)).

Analysis. Here John Hancock removed this case from the common pleas court alleging diversity jurisdiction. This Court must determine whether or not the action was properly removed before it considers whether or not the FAA is implicated. As discussed above, the fact that the underlying contracts contained arbitration clauses does not provide any independent basis for this Court to exercise subject matter jurisdiction. Whether this Court has subject matter jurisdiction depends solely on whether there was an independent basis to remove the case from the common pleas court. John Hancock argues that diversity provides jurisdiction.

Decisions of the Southern District of Ohio have consistently held that the federal court's diversity jurisdiction is reverse preempted by the Liquidation Act based on the McCarran-Ferguson Act, 15 U.S.C. § 1101 *et seq. See Covington v. Sun Life of Canada Holdings,* No. C-2-00-069, 2000 WL 33964592, at *10 (S.D. Oh. May 17, 2000) (concluding that the federal statutory authority governing the removal of this action effectively invalidates, impairs, or supersedes Ohio Revised Code §§ 3903.04(E) and 3903.28(G) by preventing the consolidation of all liquidation proceedings related to an insolvent insurance company in one forum); *Proliance Insurance Co. v. Allenbrook,* No. C-2-00-319 (S.D. Ohio Aug.

9

22, 2001) (holding that diversity jurisdiction for common law claims was reverse preempted by the McCarran-Ferguson Act); *Covington v. Carvill America, Inc.*, No. C2-01-105 (S.D. Oh. Nov. 5, 2001) (holding that Ohio Revised Code § 3903.04(E) is a law enacted for the purpose of regulating the business of insurance as contemplated by the McCarran-Ferguson Act).

Although these cases have not involved suits against a reinsurer and there was no demand for arbitration, these distinctions do not change the analysis. The General Assembly has regulated reinsurance as part of the overall business of its licensed insureds. Ohio controls what constitutes valid reinsurance, and reinsurers must comply with Ohio's insurance regulations in order to do business with Ohio insurers. *See, e.g.*, Ohio Rev. Code §§ 3901.63, 3901.64, and 3903.32. Reinsurance is part of the business of insurance for the purposes of the McCarran-Ferguson Act. John Hancock's demand that the Liquidator arbitrate her claims is wholly irrelevant to whether this Court has subject matter jurisdiction. For removal to be proper, a federal question must appear on the face of the complaint. A case cannot be removed on the basis of a federal defense. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). John Hancock's argument that the Liquidator seeks to divest this Court of diversity jurisdiction to hear its "strictly procedural" FAA claim wholly misses the mark. That claim could never be a basis for subject matter jurisdiction in this case. In any event, the FAA does not provide an independent basis for federal subject matter jurisdiction. In the

10

absence of federal subject matter jurisdiction, John Hancock's FAA claim will be decided by the common pleas court. Consequently, plaintiff's motion to remand is GRANTED.

### III.    Costs & Fees

Plaintiff also requests the costs, expenses, and attorney fees she incurred in responding to this improperly removed matter. Pursuant to 28 U.S.C. §1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award of fees and costs is not automatic but may be made where "fair and equitable under all the circumstances." *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993)(quoting *Morgan Guarantee Trust Co. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992)). A finding of improper purpose or bad faith is not necessary to support an award under §1447(c). *Id.*

The Sixth Circuit has stated:

The majority of §1447(c) attorney fees cases involve situations in which the district court has awarded such fees. Those cases that involve a district court's denial of fees or that reverse an award of fees are much less numerous. Nonetheless, those cases focus on the objective "propriety" of the removal attempt and set forth the following standard: an award of costs, including attorney fees, is appropriate where the defendant's attempt to remove the action was "fairly supportable," . . . or where there has not been at least some finding of fault with the defendant's decision to remove . . . . By reverse implication, a court abuses its discretion by refusing to award fees where the defendant's argument for removal was devoid of even fair support.

11

*Ahearn v. Charter Township of Bloomfield*, No. 97-1187, 1998 WL 384558, at *2 (6th Cir. June 18, 1998)(citations omitted).

Although the Court does not believe that John Hancock removed this action in bad faith, the Court concludes that plaintiff is entitled to the reasonable costs, expenses, and attorney fees she incurred in preparing the motion to remand and the reply brief. There is substantial case law finding that the federal court's diversity jurisdiction is reverse preempted by the Liquidation Act based on the McCarran-Ferguson Act, and this Court must have jurisdiction prior to enforcing the FAA. Because John Hancock's decision to remove this case was not fairly supportable, the Court concludes that an award of costs and fees is fair and equitable under the circumstances.

### IV.    Conclusion

For the above stated reasons, plaintiff's April 5, 2004 motion for remand (doc. 8) is **GRANTED**; remand to the Franklin County Court of Common Pleas is stayed, however, pending a determination of plaintiff's costs and fees incurred in preparing the motion to remand and the reply brief. Plaintiff is **ORDERED** to submit an itemized statement of such costs and fees and supporting memorandum **within ten (10) days of the date of this Order.** Thereafter, John Hancock may file a brief in opposition within seven (7) days of the date of service of plaintiff's statement and supporting memorandum.

12

George C. Smith
United States District Judge

13

**TRANSMITTAL SHEET FOR APPEAL SUBMITTED TO U.S. DISTRICT COURT**

| | |
|---|---|
| Bankruptcy Case Number: | 00-4070 |
| Adversary Proceeding Number: | 05-50818 |
| Deputy Clerk Transferring Case: | Margaret A. Stansbury (302-252-2900 Ext. 5120) |
| Case Type: | Motion for Leave to Appeal |

**Order, Date Entered and Issues**

Order Denying Motion of Liquidator of Credit General Insurance Company and Credit General Indemnity Company to Reconsider the Court's Memorandum Opinion and Order Denying Motion to Dismiss or Stay, entered on 12/16/05 (D.I. 36) and the associated Opinion of even date (D.I. 35); and the Order Denying Liquidator of Credit General Insurance Company and Credit General Indemnity Company's Motion to Dismiss or Stay the Adversary Action entered on 9/23/05 (D.I. 22) and the associated Opinion of even date (D.I. 21)

**Notice of Appeal is attached.**  (Appeal No. AP-05-87)

**Designations not filed.**

| | |
|---|---|
| **Debtor:** | **PRS Insurance Group, Inc., et al.** |
| | |
| **Counsel:** | Maureen D. Luke, Esq. |
| | Edward J. Kosmowski, Esq. |
| | Young Conaway Stargatt & Taylor LLP |
| | The Brandywine Building |
| | 1000 North West Street, 17th Floor |
| | Wilmington, DE 19899 |
| | Telephone: (302) 571-6600 |
| | |
| **Appellant:** | **Ann H. Womer Benjamin, Superintendent of the Ohio Department of Insurance, in her capacity as Liquidator of Defendants Credit General Insurance Company and Credit General Indemnity Company** |
| | |
| **Counsel:** | Steven K. Kortanek, Esq. |
| | Jennifer L. Scoliard, Esq. |
| | Klehr Harrison Harvey Branzburg & Ellers, LLP |
| | 919 N. Market Street, Suite 1000 |
| | Wilmington, DE 19801 |
| | Telephone: (302) 552-5503 |
| | and |
| | Stephen G. Schweller, Esq. |
| | Susan M. Luken, Esq. |
| | Dinsmore & Shohl LLP |
| | 1900 Chemed Center |
| | 255 East Fifth Street |
| | Cincinnati, OH   45202 |

**Appellee:**                                          **Sean C. Logan, in his capacity as Chapter 11 Trustee of PRS Insurance Group, Inc., et al.**

**Counsel:**                                            Maureen D. Luke, Esq.

Edward J. Kosmowski, Esq.

Young Conaway Stargatt & Taylor LLP

The Brandywine Building

1000 North West Street, 17th Floor

Wilmington, DE 19899
        and

Harold S. Horwich, Esq.

Stephen M. Hryniewicz, Esq.

Bingham McCutchen LLP

One State Street

Hartford, CT 06103